**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Henry MITCHELL, III, Defendant-
Appellant.**

**No. 324, Docket 31865.**

United States Court of Appeals
Second Circuit.

Argued March 12, 1968.

Decided April 1, 1968.

See also, 2 Cir., 354 F.2d 767; D.C.,
246 F.Supp. 874.

Jon O. Newman, U. S. Atty. for District of Connecticut, for plaintiff-appellee.

Kunstler & Kunstler, New York City, and Samuel Gruber, Stamford, Conn., (William M. Kunstler, New York City, on the brief), for defendant-appellant.

Before KAUFMAN and HAYS, Circuit Judges, and RYAN, District Judge.*

RYAN, District Judge:

This is an appeal from an order of Judge Clarie denying appellant's motion for reduction of sentence imposed on March 16, 1966 following a return of a jury verdict of guilty of failure to report for induction into the Armed Forces of the United States (Title 50 App.U.S.C. § 462). Defendant was sentenced to five years' imprisonment, with a recommendation that the sentence be served in an institution not located in the States of New York or Connecticut and a further recommendation that parole not be granted until the defendant had served a period of time equal to the minimum time of military service of an inductee in the Armed Forces. The sentence was within the statutory maximum; no fine was imposed although the statute permits imposition of a fine not exceeding $10,000 in addition to a prison term.

The conviction was affirmed by this Court on December 5, 1966, (2 Cir., 369 F.2d 323); certiorari was denied by the Supreme Court on March 20, 1967 (386 U.S. 972, 87 S.Ct. 1162–1163, 18 L.Ed. 2d 132); and a petition for rehearing was denied on May 8, 1967. This motion was filed on September 1, 1967, heard on September 18, 1967, and denied on September 27, 1967.

* Of the District Court of the Southern District of New York, sitting by designation.

The principal reason advanced for reduction of sentence is that the sentencing Judge, in imposing the maximum prison term, was motivated by "personal animus" and "a personal dislike of appellant's alleged agnosticism," which defendant urges are "unconstitutional criteria" and constitute an abuse of discretion.

Before turning to the record of the proceedings at the time of sentence, we dispose of the preliminary argument raised by the Government that this motion was not timely made under Rule 35, F.R.Crim.P., and that, therefore, neither the sentencing Court nor this Court has jurisdiction to entertain it.

The motion was made long after 120 days from the date of denial of certiorari. It was, however, made within 120 days of the date of the order denying a rehearing on the denial of certiorari.

The Government contends that Rule 35 clearly provides that a motion to reduce a sentence must be made within 120 days of denial of certiorari, and that the petition for rehearing does not toll the 120 days. It argues that this is evidenced by the three examples cited in the Reviser's Notes upon the amendment of Rule 35 extending the time for the making of such motions from 60 days to 120 days, which make no mention of petitions for rehearing. To hold otherwise, the Government urges, would serve to extend the time for the making of a motion to reduce sentence indefinitely by the bringing on of successive petitions for rehearing.

Defendant's position is that the time within which such a motion may be made is to be computed from the date of the order denying a petition for rehearing, since such an order is to be construed as "having the effect of upholding a judgment of conviction."

Judge Clarie ruled that he would consider the motion "as if legally and properly filed" and proceeded to the merits.

It may well be that appropriate provisions for a halt in repeated filings of petitions for rehearing should be included in amendments to Court rules, rather than by applying a strained and strict construction of Rule 35. We do not have an instance of abuse of process here for no one can argue with the appellant's statement that a petition for rehearing is a common last step before a defendant resigns himself to the fact of his conviction.

At this time we see no occasion to decide which position has the greater merit.

■ The record of the sentencing Court discloses that defendant-appellant and counsel, prior to the imposition of sentence, were given great latitude in addressing the Court. Both delivered what were in essence political discussions critical of the United States' foreign policies. Counsel very inappropriately concluded with the statement that they had sought justice, not mercy, and a "full ventilation of American foreign policy." The defendant's address was an intemperate harangue concerning his personal views on moral questions. It went far beyond the bounds of propriety; it was of matters in no way relevant to the prosecution and far exceeded his right of allocution, a right to make a statement on his own behalf or in mitigation of punishment (Green v. United States, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670). In support of his professed "moral principles," the defendant characterized the Court as 'a "supposed Court of justice," the "perversion" and "Nazification" of which was used by the Government as a mere instrument of power, (p. 8). Further berating the Court the defendant said:

"This Court has sold justice to power and morality to patriotism. The Court has proved itself guilty as the Germans were guilty, and has taken a step towards attempting to force that guilt on all individuals in the country by enforcing the crimes of its Government."

The balance of defendant's statement was a vitriolic attack on the United States Government and the reading into the record of a statement of a "European writer" on this subject. It was plainly

written and prepared in advance and was not extemporaneously made.

■ Allocution does not grant a defendant the right to enter into a diatribe of the sentencing Judge, or of the Court, or the judicial system of which he is a part. It is not a time for platform speeches on either philosophical, religious or political issues. All are provided by our laws with opportunity for full public discussions to an extent which has never been equaled by any organized society or government. The time of imposition of sentence is not a public forum to be used by either a defendant or his attorney for that purpose.

The sentencing Judge displayed patience, restraint and prudence in not taking issue with these offensive epithets and remarks. The record discloses that Judge Clarie did say, however, that:

"The Court has carefully reviewed the Probation Officer's Report. It is difficult for the Court to rationalize the defendant's reference to morality and virtue at this time to justify his position, in light of certain things in the report of the Probation Officer.

"According to the probation report, the defendant is an agnostic; he doesn't believe in a Supreme Being. From April '62 to the summer of '64, he was in a common law relationship with a woman in New York. It is difficult to understand virtue and morality as being personal motivations at this time, in respect to his appearance before the bar of this court."

When requested by counsel to strike these observations (which counsel misquoted), Judge Clarie refused to do so, stating:

"The Court did not say he had a doubtful sense of morality. The Court had difficulty rationalizing his reference to morality."

Defendant's counsel, on the motion to reduce sentence, made an impassioned, if irrelevant, statement to the Court. It ran on for 16 pages of the transcript; he spoke of Vietnam policy, Thoreau, the Nuremberg trials, public opinion, and defendant's courage and integrity. He urged that all of this should impel the Court to exercise mercy and lower defendant's sentence to what counsel represented he understood were the usual sentences for similar offenders. As much of this presentation was directed to the worthiness of the defendant's position as to the fact that Judge Clarie had commented on his agnosticism and marital status.

The Judge denied the motion with the following comments:

"The Court had no prejudice or animus toward this accused. In fact, the Court in a sense is sympathetic to the fact that he should find himself as a criminal before the Court, not willing to perform the duties required by law, or conform with the duties prescribed by law.

"The Court has no animus concerning this man. The Court was then, and is now, firmly of the opinion that a fair and just sentence in the case of David Henry Mitchell was a sentence of five years. The motion is therefore denied. That is all."

Whatever one might think of the relevance of defendant's lack of belief in God and in a marriage ceremony to the particular moral principles defendant was proclaiming (as to which men can and do honestly differ) and the failure of the Court to withhold comment on these matters at that moment, the record is barren of any indication that the Court was motivated or in any manner influenced by the defendant's intemperate remarks in deciding to impose on defendant a five-year sentence. Judge Clarie's own statement shows that he was not prejudiced against defendant because he was an agnostic or living with a woman not his wife; to the contrary, he stated that he felt compassion for the defendant.

Irrespective of whether such factors were considered relevant or irrelevant by the sentencing Judge, there is absolutely nothing in the record to show that Judge

Clarie gave them any weight in arriving at his decision.

■ Moreover, there is nothing in the length of the sentence itself which would give support to defendant's charge of animus. On his prior conviction, the defendant had been sentenced by another Judge not only to five years but also to a $5,000 fine. We are informed by the Government in its brief that, in 1967, there were 58 such five-year sentences imposed following conviction for this crime. Sentences should not be meted out on the basis of a comparison study, and we mention this matter only as a further indication that Judge Clarie was not unduly harsh in his punishment. As Williams v. People of State of New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), pointed out, the modern philosophy of penology is to have the punishment fit the individual rather than the crime; this the record shows Judge Clarie conscientiously sought to do.

■ Finally, the five-year sentence accomplished what the Probation Officer had recommended. The Court accepted and acted upon this recommendation for, at the imposition of sentence and at the argument on the merits, it commented upon the fact that the commitment of defendant was for a period of time at least equal to a period of military service.

We affirm the denial of the motion to reduce the sentence imposed. We find no need to remand for reconsideration of the sentence.

IRVING R. KAUFMAN, Circuit Judge (concurring):

The issue before this court is not the propriety, wisdom or relevance of remarks made by appellant and his counsel at various stages of the instant proceedings. The question we must answer is whether the sentence imposed by the trial judge was based upon constitutionally permissible factors or otherwise conflicts with standards necessary for the proper administration of justice in the federal courts.

It is frequently and correctly asserted that it is not the function of appellate courts to review sentences that are within statutory limits. Blockburger v. United States, 284 U.S. 299, 305, 52 S.Ct. 180, 76 L.Ed. 306 (1932). And, trial judges must not be inhibited from articulating intelligible and rationally defensible explanations for particular sentencing decisions, see Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L.Rev. 821, 843–845 (1968), or from making judicious use of available and relevant information, see Williams v. People of State of New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). But, it is not beyond the power of a federal appellate court to vacate a sentence based upon clearly erroneous criteria. See United States v. Wiley, 278 F.2d 500 (7th Cir. 1960).

The difficulty I perceive in the sentencing judge's unfortunate statement concerning appellant's lack of belief in a Supreme Being is not that it refers to religion (an area often appropriately discussed in presentence reports) but its apparent equation between moral well-being and the possession of certain religious beliefs. To infer that an individual because he is an agnostic is of doubtful virtue or morality seems to me to overlook that under our system of government all are guaranteed freedom of and from religion.

It may well be true that the sentencing judge did not indicate in imposing sentence that he was influenced by appellant's agnosticism. But his remarks were made and they cannot now be ignored merely because the record does not explicitly disclose the specific factors relied upon.

I, nevertheless, am constrained to agree with the majority that on the particular facts of this case no useful purpose would be served by remanding to the sentencing judge for reconsideration of his decision—the remedy requested by counsel for appellant during oral argu-

ment.* Appellant has already received the benefits of the trial judge's second thoughts at the hearing held pursuant to Rule 35 of the Federal Rules of Criminal Procedure. At that time the sentencing judge characterized his earlier remarks as "off the cuff," asserted that he felt neither prejudice nor animus toward appellant and reiterated his belief that a five-year prison term was a fair and just sentence. I see no reason to compel the trial judge to do what he has already said he has done. I believe that it ill comports with the integrity of the judicial process to vacate a ruling below and remand for what will of necessity be a formalistic and meaningless imprimatur.

---

* In his brief, appellant suggested that we direct the trial judge to impose a sentence not in excess of the national average for the crime for which appellant was convicted. But it is clearly not the function of this court to determine the sentence appellant should serve. The national average is no more than that—an average—and bears no relationship to many of the factors that a trial judge must consider in imposing sentence.