**UNITED STATES of America, Plaintiff,**

v.

**Joseph F. SCHIPANI, Defendant.**

**No. 63 CR 237.**

United States District Court, E. D. New York.

June 4, 1970.

Edward Neaher, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., for plaintiff; David G. Trager, New York City, of counsel.

Jacob P. Lefkowitz, New York City, for defendant.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

The defendant has moved, pursuant to Rule 35 of the Federal Rules of Criminal Procedure, for reduction of the sentence imposed by this Court upon his conviction for tax evasion. 26 U.S.C. § 7201. On the facts, and in the exercise of discretion, this motion would have been denied out of hand were a troublesome question of law not posed: In imposing sentence may the court consider facts and inferences drawn from illegally obtained evidence suppressed at trial? For the reasons below, we hold that in some cases, including this one, such evidence may be utilized in sentencing.

## I. FACTS

Following reversal of the defendant's first conviction (Schipani v. United States, 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428 (1966)), a motion to suppress illegally obtained wiretap evidence was granted. United States v. Schipani, 289 F.Supp. 43 (E.D.N.Y.1968). After a second trial, the defendant was convicted on the basis of untainted evidence. 293 F.Supp. 156 (E.D.N.Y.1968), aff'd, 414 F.2d 1262 (2d Cir. 1969), cert. denied, 397 U.S. 922, 90 S.Ct. 902, 25 L.Ed.2d 102 (1970). The same judge who presided at the suppression hearing imposed sentence.

In deciding upon a sentence the Court considered data introduced at the hearing on the motion to suppress but excluded at the trial. Illegal wiretapping of conversations involving the defendant and his associates established that the defendant was a criminal figure, and that his undeclared income was the proceeds of organized crime. United States v. Schipani, 289 F.Supp. 43, 46–48 (E.D.N.Y.1968).

Defendant was sentenced to three years' imprisonment on each count, to run concurrently. 18 U.S.C. § 4208(a)(2). In addition, a committed fine of $2,500.00 was imposed on each of the five counts, for a total of $12,500.00.

This sentence was near the maximum that could be imposed consistent with due process after the second trial. North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969). The jail term was far longer than would be expected in a routine tax case. *See, e.g.,* Craig, Sentencing in Federal Tax Fraud Cases, 49 F.R.D. 97 (1970). A primary reason for severity was the court's conclusion that the defendant was a "professional criminal." ALI, Model Penal Code § 7.03(2) (b) (P.O.D.1962). *See* Wechsler, Sentencing, Correction, and the Model Penal Code, 109 U.Pa.L. Rev. 465, 480–83 (1961); Turnbladh, A Critique of the Model Penal Code Sentencing Proposals, 23 Law & Contemp. Problems 544, 546–547 (1958).

## II. NECESSITY OF INFORMATION FOR SENTENCING PURPOSES.

In deciding upon a sentence appropriate to an individual defendant, a variety of needs must be considered. Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1969); United States v. Mitchell, 392 F.2d 214 (2d Cir. 1968). Among them are the possibilities of rehabilitation, general or specific deterrence, protection of potential victims by incapacitating socially dangerous offenders, and maintenance of respect for legal norms. *See* ABA, Standards Relating To Sentencing Alternatives and Procedures, 62–63 (Approved Draft, 1968); L. Empey, Alternatives to Incarceration, 1–6, 70 (1967); Advisory Council of Judges of the National Probation and Parole Association, Guides for Sentencing, 1–5 (1957); Ohlin & Remington, Sentencing Structure: Its Effect Upon Systems for the Administration of Criminal Justice, 23 Law & Contemp. Problems, 495, 496–499 (1958); Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L. Rev. 821–825 (1968). A sentence reflects a prediction of future events based largely upon the defendant's past and the court's sociological conceptions.

As much reliable data as possible on the background of the individual defendant is essential to any intelligent choice among the many available alternatives. "The aim of the sentencing court is to acquire a thorough acquaintance with the character and history of the man before it." United States v. Doyle, 348 F.2d 715, 721 (2d Cir. 1965). Any information which may lead to a better understanding of the needs of the defendant and of society may, and should, within the limitations of due process, be considered. ABA, Standards Relating to Probation, 34–39 (Tent. Draft, 1970); Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Gollaher v. United States, 419 F.2d 520, 530 (9th Cir. 1969); Heidrich v. United States, 373 F.2d 540 (5th Cir. 1966).

Recognizing the necessity for unfettered access to information by the sentencing judge, courts have regularly upheld the propriety of wide-ranging presentence investigations and reports. As the Supreme Court has remarked, "[t]here are no formal limitations on [presentence reports'] contents and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged." Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L. Ed.2d 442 (1969). *See also, e.g.,* Williams v. New York, 337 U.S. 241, 69 S. Ct. 1079, 93 L.Ed. 1337 (1949); United States v. Doyle, 348 F.2d 715 (2d Cir. 1965); Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Rules of Evidence for United States District Courts and Magistrates, Rule 11–01(d) (3), 46 F.R.D. 161, 417 (1969) (rules do not apply to sentencing).

■■ Fairness, accuracy, and procedural due process do limit the sources which may be considered by the sentencing judge. *See, ·e.g.,* Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); Scott v. United States, 419 F.2d 264 (D.C.Cir. 1969); Haller v. Robbins, 409 F.2d 857 (1st Cir. 1969). *See generally* Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L.Rev. 821 (1968). But such restrictions are designed to protect the integrity of the sentencing procedure rather than the legality of earlier stages of the prosecution.

■ The broad acceptance of hearsay presents a striking example of the scope of presentence investigations and the quality of materials which may be considered by the sentencing judge. *See, e.g.,* Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); Taylor v. United States, 179 F.2d 640 (9th Cir. 1950). Limits on the use of hearsay at sentencing depend solely upon assessment of probative force. United States v. Doyle, 348 F.2d 715, 720 (2d Cir. 1965). *But cf.* United States v. Rao, 296 F.Supp. 1145, 1148 (S.D.N.Y. 1969) (hearsay indicating defendant's underworld connections does not constitute a predicate for punishment).

In the instant case the questioned evidence consists largely of admissions by the defendant and declarations against penal interest by his associates; its probative value is high, and even its status as excludable hearsay is questionable. *See, e. g.,* 4 J. Wigmore, Evidence § 1048 (3d ed. 1940); 5 *Id.* §§ 1361, 1476, 1477; 6 *Id.* § 1766; Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R.D. 161, 331–334, 339–343, 385–387 (1969); C. McCormick, Handbook of the Law of Evidence §§ 239, 255 (1954); Donnelly v. United States, 228 U.S. 243, 277, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (Holmes, J., dissenting). The accuracy of these out-of-court statements, and of the inferences which may readily be drawn from them, was not questioned either at allocution or at the hearing on the motion to reduce sentence. Unless they should not have been considered because of factor unrelated to probative force, it was therefore appropriate to accord them substantial weight in the sentencing decision.

## III. APPLICATION OF EXCLUSIONARY RULE

### A. Purposes of Exclusionary Rule in Fourth Amendment Cases

■ The primary purpose of the exclusionary rule in the case of Fourth Amendment violations is to discourage unconstitutional acts outside the courtroom by law enforcement officials. It is assumed that illegal searches and seizures will not be undertaken if they will have no meaningful effect. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); Pizzarello v. United States, 408 F.2d 579, 586 (2d Cir. 1969) (civil case); J. Maguire, Evidence of Guilt § 5.02 (1959); B. J. George, Constitutional Limitations on Evidence in Criminal Cases, 39–42 (1966).

Since the exclusionary rule has a pragmatic orientation, it is to be expected that it will not be unnecessarily applied. And, in fact, there are a number of well recognized instances permitting reliance upon evidence obtained in violation of the Fourth Amendment.

■ Illegally seized evidence may be considered by a parole board in deciding to revoke parole. United States ex rel. Sperling v. Fitzpatrick, 426 F.2d 1161 (2d Cir. 1970). The similarity of functions between a sentencing court and a parole board is apparent. As is the case with the parole board, "[t]o apply the exclusionary rule would tend to obstruct * * * accomplishing * * * remedial purposes" of the sentencing procedure. Id. at 1163. A court, as well as a parole board, needs all possible information that may lead to insights into the character of the defendant. Both are vested with "the broadest discretion consistent with due process to act upon reliable evidence" in determining treatment. Id. at 1163.

■ Grand jury proceedings constitute a second area in which the use of illegally obtained evidence is not absolutely forbidden by the exclusionary rule. United States v. Blue, 384 U.S. 251, 255, n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); Lawn v. United States, 355 U.S. 339, 348–350, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). Cf. United States v. Tane, 329 F.2d 848 (2d Cir. 1964). The important protective function of the grand jury is held not to be vitiated by the use of some illegally obtained evidence so long as the government proves the defendant's guilt at the trial through untainted evidence.

■ A third clear exception to the exclusionary rule in Fourth Amendment cases is to be found in the continuing application of the doctrine of standing. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Although wiretap evidence may be the product of an unlawful search and seizure, coconspirators or codefendants who are aggrieved "solely by the introduc-

tion of damaging evidence" "have been accorded no special standing," Id. at 172, 89 S.Ct. at 965. Such evidence, although illegally obtained, may be used at trial without violating the deterrent policy of the exclusionary rule.

■ Finally, evidence obtained through an unlawful search and seizure may be used to a limited extent to impeach the credibility of a criminal defendant who has made untruthful assertions at trial on his direct case. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1953); Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R.D. 161, 191 (1969). Cf. United States v. Guglielmini (II), 425 F.2d 439 (2d Cir. 1970) (improperly obtained statement may be used to impeach a nondefendant witness); United States v. Fox, 403 F. 2d 97, 103 (2d Cir. 1968) (Walder not applicable to Miranda situations). But see United States v. Birrell, 276 F.Supp. 798, 817 (S.D.N.Y.1968).

### B. Exclusionary Rule In Sentencing

■ Despite the analogous cases just discussed, it has been held that use of an involuntary confession at sentence warrants its being set aside. United States ex rel. Brown v. Rundle, 417 F.2d 282 (3d Cir. 1969); United States ex rel. Rivers v. Myers, 384 F.2d 737 (3d Cir. 1967); Armpriester v. United States, 256 F.2d 294, 297 (4th Cir. 1958) (dictum). Whatever the merits of such rulings, they are not applicable here. The original rationale for the rule against coerced confessions was lack of reliability. 3 J. Wigmore, Evidence § 822 (3d ed. 1940); Miller, The Supreme Court's Review of Hypothetical Alternatives in a State Confession Case, 5 Syr. L.Rev. 53 (1953), reprinted in Selected Writings on the Law of Evidence and Trial 847, 848 (W. Fryer ed. 1957). Thus, even when there is no coercion, courts, led—or misled—by the genesis of self-incrimination and confession rules

in fears of unreliability, might exclude on sentencing illegally obtained but trustworthy confessions.

No such a historical or theoretical basis for exclusion is presented in cases arising under the Fourth Amendment, which was adopted for entirely different purposes. *See e.g.*, Katz v. United States, 389 U.S. 347, 350, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Decisions excluding the use at sentencing of confessions obtained in violation of the Fifth Amendment are not persuasive Fourth Amendment precedents.

On principle, exclusion of illegally seized evidence on sentencing would seem to be generally unwarranted. In unlawfully searching and seizing property or conversations the government runs the risk at trial that its entire case against the defendant will be found to have been irrevocably tainted and that the evidence obtained against him—as part of a general criminal investigation—will be held inadmissible. *See, e.g.*, Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1920); Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Paroutian, 299 F.2d 486 (2d Cir. 1962); United States v. Schipani, 289 F.Supp. 43 (E.D.N.Y.1968). Absent some special situation, no appreciable increment in deterrence would result from applying a second exclusion at sentencing after the rule has been applied at the trial itself. *Cf.* Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. Pa.L.Rev. 378, 389 (1964); Committee on Federal Legislation, Assoc. of the Bar of the City of New York, Report on the Proposed Organized Crime Control Act of 1969, 46 (May, 1970) (assumes illegally obtained evidence may be used in sentencing).

There are few cases which deal directly with the use of unlawfully seized evidence at sentencing. J. Maguire, Evidence of Guilt § 5.03 at 181 (1959). The only federal case we have found that is arguably on point is Verdugo v. United States, 402 F.2d 599 (9th Cir. 1968. *Cf.* United States v. Sanchez, 422 F.2d 1198, 1202 (2d Cir. 1970) (refusing to pass on application of *Verdugo* to a *Miranda* situation). *Verdugo* was remanded for resentence because the trial judge had relied upon a presentence report which, in turn, had been based upon illegally seized evidence.

The *Verdugo* opinion is predicated upon the fact that the search which had produced the improper evidence was conducted outside the course of the regular criminal investigation. It was undertaken, not to obtain evidence to support an indictment and conviction, but to recover contraband and thus to enhance the possibility of a heavier sentence after the basic investigation had been completed. At the time of the illegal search government agents had more than enough evidence on hand to secure a conviction of the defendant on what later became the first count of the indictment. The questioned search was made "to locate a wholesale supply of heroin * * *. [T]he agents went to Verdugo's home 'to look for the contraband and to make an arrest to get the same.'" *Id.* at 612. This evidence was used as the basis for a second count of the indictment, subsequently dismissed on motion by the government after the motion to suppress had been granted.

In *Verdugo* and similar cases, if a trial judge were permitted to consider the illegally obtained evidence in passing sentence, law enforcement officials would have little to lose, but much to gain, in violating the Fourth Amendment. If their search were upheld as valid, there would be evidence sufficient to justify the additional count (and, of course, it could be considered in sentencing on the original count). If the search were declared invalid, the Court would nevertheless be able to consider this strong evidence that the defendant was more than a mere dabbler in narcotics and was, in fact, a major trafficker. Without exclusion in such a situation, there would be no deterrence to violation of the Fourth Amendment. As the Court noted in *Verdugo*,

"Quite different considerations would apply if the object of the search were to obtain evidence to support a single charge on which the defendant was later convicted. If the additional evidence was necessary to obtain *any* conviction at all, the danger of exclusion at trial would afford a substantial deterrent to an illegal search. If the additional evidence was *not* required for conviction, both the deterrent effect of the exclusion of illegally seized evidence of the same offense at sentencing and the incentive to conduct legal searches to obtain such evidence would appear to be minimal." *Id.* at 612, n. 21 (Emphasis in original).

The case now before us differs substantially from *Verdugo*. The evidence excluded at trial was gathered in a basic investigation of the defendant and a number of suspected members of an organized crime syndicate. It was offered to support all of the counts of the indictment, which differed only as to the taxable years involved. It cannot be said that this information was gathered for any purpose other than the indictment and conviction of the defendant and his criminal associates, and it cannot be said that application of the exclusionary rule at sentencing in this and similar cases would have any appreciable deterrent effect.

## C. Practical Considerations

Several practical considerations support the conclusion that the exclusionary rule should not be rigidly applied to the sentencing process. First, sentencing has traditionally been left to the discretion of the trial judge. Note, Procedural Due Process at Judicial Sentencing for Felony, 81 Harv.L.Rev., 821, 822–823 (1968). No statement of his reasons for imposing sentence is ordinarily required. *But cf.* United States v. Latimer, 415 F.2d 1288, 1291 (6th Cir. 1969). Frequently, the decision will rest on the application of unarticulated principles and factors lying at the threshold of the conscious. The oft noted wide variation in sentences suggests how powerful in advocacy is the individual judge's background.

A seriously enforced requirement that the exclusionary rule be applied in sentencing would require the judge to explain the basis of his decision and would expand appellate review far beyond its present scope. Perhaps such changes are desirable, but reforms of this nature should not be attempted by indirection. *Cf.* ABA, Standards Relating to Appellate Review of Sentences, 50–53 (Approved Draft, 1968).

Another, and more serious, practical consideration weighs against the adoption of an absolute exclusionary rule in the imposition of sentences. It would be almost impossible for a district judge, who has screened proffered evidence on the motion to suppress, to banish it entirely from his mind at sentencing. This problem is similar to that raised and resolved in United States v. Smith, 337 F.2d 49, 53–54 (4th Cir. 1964), cert. denied, 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965), where the court refused to hold that a sentencing judge should disqualify himself under 28 U.S. C. § 455 from passing upon a motion under 28 U.S.C. § 2255. *See also, e.g.,* United States v. Halley, 240 F.2d 418 (2d Cir.), cert. denied, 353 U.S. 967, 77 S.Ct. 1052, 1 L.Ed.2d 917 (1957); United States v. Valentino, 283 F.2d 634 (2d Cir. 1960).

One reason for the practice of assigning the trial judge to sentencing is his familiarity with all aspects of the case. He has seen and observed the defendant; he is aware of the strengths and weaknesses of the prosecution; and he has had the opportunity to hear and evaluate any character testimony offered. Much of this knowledge might be detrimental if a fixed exclusionary rule were to be adopted in regard to sentencing. To require the trial judge to pick and choose among the items of evidence and the impressions which he has received at and before trial would be to require an unusual degree of self-awareness and control.

An impractical rule of total suppression would almost invite self-deception by a judge forced to deny that he had considered a factor that was strongly influencing his subconscious reactions. The judge's capacity to ignore such information is probably better than a juror's, but it is limited. *Cf.* Bruton v. United States, 389 U.S. 818, 88 S.Ct. 126, 19 L.Ed.2d 70 (1968); Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Rules of Evidence for United States District Courts and Magistrates, 46 F.R.D. 161, 192–193 (1969). As was noted in the context of legal conclusions,

> "we well know how liable the best minds are, notwithstanding their utmost care, to a bias, which may arise from a preconceived opinion. * * * "

Iredell, J., in note to Hayburn's Case, 2 Dall. 408, 414, 1 L.Ed. 436 (1792). The difficulty in separating the elements of any decision is even greater when factual determinations are involved. This same argument of judicial frailty would also, of course, apply in a case such as Verdugo v. United States, 402 F.2d 599 (9th Cir. 1968), discussed *supra*, requiring some illegally obtained evidence to be excluded on sentencing. But we ought not compound the difficulties by unnecessarily broadening the exclusionary rule.

Finally, the Federal Rules of Criminal Procedure do not require the court to permit inspection of presentence reports by defense counsel. F.R.Cr.P. 32. Even the proposed changes in Rule 32 would not mandate disclosure in all circumstances. Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure for the United States District Courts, 62–63, 65–67 (1970). *See also* ABA, Standards Relating to Sentencing Alternatives and Procedures, 213–25 (Approved Draft, 1968). These reports—ordinarily not part of the appellate record—usually do not specify sources. Without such disclosure, it is quite possible that in many instances the use of excludable evidence in a presentence report would pass unnoticed by the trial court, defense counsel, and appellate tribunals. Unless specific disclosure of all sources becomes the rule rather than the exception (Good v. United States, 410 F.2d 1217 (5th Cir. 1969); United States v. Crutcher, 405 F. 2d 239 (2d Cir. 1968), cert. denied, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); Baker v. United States, 388 F.2d 931 (4th Cir. 1968); United States v. Conway, 296 F.Supp. 1284 (D.D.C. 1969)), any application of a general exclusionary rule to sentencing would be of little value. Moreover, the extension to post-trial situations of burdensome motions to suppress is not a step which ought to be taken unless the necessity is clear.

In the process of eliminating some of the fictions and pretensions of the law to afford more practical protections to defendants, we ought not create rules inviting mendacity. *Compare* United States v. Mitchell, 392 F.2d 214, 218 (2d Cir. 1968) (Kaufman, concurring) ("it ill comports with the integrity of the judicial process to vacate a ruling below and remand for what will of necessity be a formalistic and meaningless imprimatur.").

## IV. CONCLUSION

The purposes of the exclusionary rule, analogous cases, and practical considerations in the administration of justice all lead to the conclusion that no arbitrary rule excluding from the consideration of the sentencing judge all illegally seized evidence should be adopted. Where the evidence is reliable and it is perfectly clear that it was not gathered for the purposes of improperly influencing the sentencing judge, evidence should be accorded whatever probative value it may have. Because as complete as possible an understanding of the defendant is so important in sentencing, any exclusion of evidence should be undertaken reluctantly. No useful purpose would be served by exclusion in this case.

The motion for reduction of sentence is denied.

So ordered.