**UNITED STATES of America,**
**Appellee,**

v.

**Wesley Clyde BROWN, Appellant.**

**No. 739, Docket 73–1068.**

United States Court of Appeals,
Second Circuit.

Argued March 23, 1973.

Decided May 23, 1973.

Feinberg, Circuit Judge, dissented and filed opinion.

---

Michael B. Standard, New York City (Herbert Jordan, Rabinowitz, Boudin & Standard, New York City, N. Y., of counsel), for appellant.

David A. De Petris, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for appellee.

Before SMITH, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

By decision filed on December 6, 1972, United States v. Brown, D. C. Cir., 470 F.2d 285, we vacated a judgment of the United States District Court for the Eastern District of New York, Walter Bruchhausen, *Judge,* sentencing Wesley Clyde Brown to a term of two and one-half years imprisonment upon his plea of guilty to a one-count indictment charging him with refusal to report for induction in violation of 50 U.S.C.App. § 462(a). The case was remanded for resentencing by another judge. We held that the refusal of the sentencing judge to make the presentence report available to Brown, pursuant to a uniform policy the judge had followed, constituted a failure to exercise his discretion under Rule 32(c)(2), F.R.Cr.P., which we found requires the discretion to be "exercised on a case-by-case basis, not by a blanket policy of non-disclosure." 470 F.2d at 288.

Upon remand the case was assigned by lot to Judge Travia, who made the presentence report available to Brown and his counsel before sentencing and, after holding a sentencing hearing, resentenced Brown to the same term that had previously been imposed. From this second sentence Brown, who has been incarcerated since January 27, 1972, appeals. He contends that Judge Travia, upon the resentencing, committed various errors which necessitate still anoth-

er resentencing. We cannot agree and must affirm the judgment of the district court.

Since the background of the case up to the point of our remand is set forth in our earlier opinion, we need not repeat it here. Upon this appeal Brown urges that Judge Travia erred in (1) failing to give any legally justifiable reasons for reimposing the same sentence, (2) failing to identify the facts in the presentence report relied on by him, (3) basing the sentence on Brown's political beliefs and on erroneous information in the presentence report, (4) failing to "redo" the entire sentencing process, and (5) abusing his sentencing discretion in reimposing the two and one-half year sentence.

To the extent that Brown asks us to review on the ground that the sentence was excessive, we must decline the invitation. We are still bound by the basic principle against appellate review of sentences except in extraordinary circumstances. United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L. Ed.2d 592 (1972); Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Blockburger v. United States, 284 U.S. 299, 305, 52 S. Ct. 180, 76 L.Ed. 306 (1932). Although cracks in the wall are beginning to develop, see Woosley v. United States, 478 F.2d 139 (8th Cir. 1973) (en banc) (5-year sentence imposed pursuant to a rigid policy upon a Jehovah's Witness for refusing induction vacated on ground that district court had "manifestly or grossly abused its discretion" and "[t]he severity of the sentence shocks the judicial conscience"), the present case is not an appropriate one for departure from the policy against appellate review. Here the sentence was one-half of the permissible five-year statutory limit. In characterizing the two and one-half year sentence imposed on Brown as "harsh" in our earlier opinion —a view from which we do not retreat —we were referring to that fact as an additional reason for requiring the sen-

tencing judge to exercise his discretion on an individual basis in this case. That discretion has now been exercised in favor of full disclosure of the presentence report with respect to Brown, and Judge Travia, in imposing sentence, has acted within the discretionary limits afforded to the district court, which are broad. United States v. Tucker, 404 U. S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); United States v. Sweig, 454 F. 2d 181, 183–184 (2d Cir. 1972); McGee v. United States, 462 F.2d 243, 245 (2d Cir. 1972). Absent the sentencing judge's reliance on constitutionally impermissible factors or upon material inaccuracies, it is not our function to review a sentence falling within statutory limits. United States v. Mitchell, 392 F.2d 214 (2d Cir. 1968); Blockburger v. United States, 284 U.S. 299, 305, 52 S. Ct. 180, 76 L.Ed. 306 (1932); United States v. Holder, 412 F.2d 212, 214 (2d Cir. 1969).

Brown's contention that the district court erred by failing to state the reasons for reimposing the same sentence and by failing to designate the portions of the presentence report relied upon by it must also be rejected. Were we writing on a clean slate, we might well be persuaded in favor of a requirement that the sentencing judge state his reasons. Such a rule would be "a powerful safeguard against rash and arbitrary decisions" at this crucial stage of the criminal process where the defendant's liberty is at stake. M. Frankel, Criminal Sentences—Law Without Order 41 (Hill and Wang 1972). It would serve "to promote thought by the decider, to compel him to cover the relevant points, to help him eschew irrelevancies —and, finally, to make him show that these necessities have been served." *Id.* at 40. It would also promote fairness by minimizing the risk that the sentencing judge might rely on misinformation or on inaccuracies in the presentence report. See United States v. Needles, 472 F.2d 652 (2d Cir. 1973). If a misapprehension on the court's part were disclosed, the defendant and his counsel

would then have the opportunity to answer and explain, pointing out the error. A Sphinx-like silence on the court's part precludes anyone (including the parties, the judge, and an appellate tribunal) from learning whether he acted in error. Furthermore, a statement of reasons by the court could prove to be of considerable assistance to prison and parole authoritites in later determining the type of institution in which the defendant should be incarcerated and the time and conditions of parole.

In the present case it would have been of considerable assistance to have had the rationale of the conscientious sentencing judge, since the information found in the presentence report and accompanying documents, all of which we have examined, is for the most part favorable to Brown. He has no known criminal record, has frankly admitted his offense, and has based his refusal to report for induction on moral grounds. The report describes him as a person who has had a better than average background and education. He has enjoyed the support of his parents and siblings, an average scholastic rating, and a good behavior record in school. He is not addicted to narcotics and, prior to his incarceration, he was reasonably self-supporting. An impressive array of letters have been sent to the court by persons offering Brown employment, and by clergymen, teachers and other members of the community, which emphasize his sincerity and talents. With respect to Brown's attitude and refusal to serve in the war effort the presentence report states that he has "deep personal convictions" and that while he is not a member of the Black Panther Party his refusal to serve is based on "beliefs as set forth in the Black Panther Party tenets from which he quotes extensively." In the face of this profile the reasoning behind the court's two and one-half year prison sentence is difficult to grasp.

■ Although a sentencing judge should in our view be encouraged to state his reasons and such a statement

would have been welcomed here, we have repeatedly held that in view of the trial judge's very broad discretion, see decisions cited page 1172, *supra*, "he is generally under no obligation to give reasons for his sentencing decisions," McGee v. United States, 462 F.2d 243, 247 (2d Cir. 1972). Clarification has been required only under circumstances not found here, e. g., where a sentence was imposed upon the basis of (1) misinformation of constitutional magnitude, such as an inaccurate criminal record, Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), (2) a record comprising prior unconstitutional convictions, e. g., United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), (3) the effect of a simultaneous sentence and conviction upon a more serious count of the indictment, which was later invalidated, McGee v. United States, 462 F.2d 243 (2d Cir. 1972), or (4) failure of the court to receive and consider mitigating circumstances, United States v. Malcolm, 432 F.2d 809, 818 (2d Cir. 1970).

With one possible exception, discussed below, we here fail to find evidence of any materially false assumptions on the part of the sentencing judge or reliance by him on material inaccuracies or on constitutionally impermissible factors. After Brown and his counsel had been afforded the opportunity to read, review and discuss the presentence report, Judge Travia convened court, made a record of Brown's motion papers and of the numerous letters with respect to Brown that had been received and read by the court and by the Probation Office. Brown's counsel then directed the court's attention to several inaccuracies in the presentence report, which were reviewed in detail by Judge Travia, who indicated either that they were immaterial or that he would not give them weight. For instance, the judge stated that as far as he was concerned Brown was not considered to be a member of the Black Panther Party. None of the alleged errors in the report, which we have reviewed, are of sufficient impor-

tance to be of constitutional significance. Accordingly we must reject Brown's contentions that his sentence be vacated because of the sentencing judge's failure to state his reasons or because of inaccuracies in the presentence report.

There remains the question whether Judge Travia, although he did not state his reasons, relied upon a constitutionally impermissible factor, i. e., Brown's expressed sympathy with the political and social views of the Black Panther Party. In a letter to his Local Board dated March 5, 1969, quoted in the presentence report, Brown stated:

> "Point six of the Black Panther Party platform and program states: 'We want all Black men exempt from military service. We believe that Black people should not be forced to fight in the military service to defend a racist government that does not protect us. We will not fight and kill other people of color in the world who, like black people are being victimized by the white racist government of America. We will protect ourselves from the force and violence of the racist police and the racist military, by whatever means necessary.'

> "This is the position I adhere to. Therefore, since the government grants no rights, I owe it no duties. And if you can't relate to that, you can [obscenity]."

After reading in open court the foregoing portion of Brown's letter, the court made the following statement:

> "The Court: He should also take the responsibility for saying those words. That brings us to the quote of Voltaire. And I don't have to quote from there." [1]

Thereupon Judge Travia, after complimenting appellant's counsel upon his efforts in the matter and stating that he had thoroughly reviewed all sentencing data and given the matter a great deal of thought, advised "I cannot change the judgment of the Court as previously set forth" and reimposed the two and one-half year sentence, subject to the condition that Brown might, pursuant to 18 U.S.C. § 4208(a)(2), become eligible for parole at such time as the Board of Parole might determine.

▬▬ Seizing upon the above-quoted remarks of the district court, Brown contends that the district judge improperly based the sentence upon his distaste for Brown's political and moral beliefs. We disagree. Although Judge Travia's statement that Brown must "take responsibility for saying those words" is not entirely free from doubt, we are satisfied from the sentencing minutes, considered as a whole, that he did not base the sentence on his revulsion arising out of Brown's social or political views, which would be improper. United States v. Mitchell, 392 F.2d 214, 217 (2d Cir. 1968) (concurring opinion of Judge Kaufman); cf. Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). Read in context, the court's remarks were apparently directed toward Brown's statement that he would protect himself from what he considered force and violence by the police or military "by whatever means necessary." Although Brown's counsel stated that these words did not amount to a "call to violence on his part," the remark, when considered with Brown's statement to the Probation Officer that "his obedience to the laws of the land is limited, if these laws conflict with certain of his personal beliefs," could properly have

---

1. The reference to the "quote of Voltaire" is puzzling. Assuming that the judge was alluding to the famous remark "I disapprove of what you say but will defend to the death your right to say it," S. G. Tallentyre: The Friends of Voltaire, the reference appears inconsistent with the idea that Brown must "take responsibility" for his words by risking jail. Possibly the court was referring to another quote from Voltaire: "Men use thought only as authority for their injustice, and employ speech only to conceal their thoughts," Dialogue 14, Le Chapon et la Poulard (1763).

raised a serious question in the sentencing judge's mind as to whether Brown posed a threat of violent or anti-social conduct to the community.

The record reveals that Judge Travia, before imposing sentence, carefully and conscientiously considered all relevant information that was available to him, including the recommendation of the two members (in addition to Judge Bruchhausen) of the earlier sentencing panel,[2] who had recommended sentences of two years and four years, respectively, and of the Probation Office, which had recommended three years. Since Judge Travia was imposing the same sentence as that previously imposed by Judge Bruchhausen, a statement of reasons would have removed any lingering doubt that he had acted arbitrarily or according to a rigid, discretionless formula. However, under the circumstances we cannot say that the sentence was not reasonably related to a legitimate sentencing purpose. Assuming that Judge Travia's duty was "to redo the entire sentencing process," McGee v. United States, supra, 462 F.2d 243, 247 n. 8, that obligation was met.

The judgment is affirmed.

FEINBERG, Circuit Judge (dissenting):

In March 1969, Wesley Clyde Brown, a young black man, delivered himself of some bitter comments on American society. To this judge, sitting in his quiet chambers, Brown's words may seem extreme and unwarranted; to some, they may be most offensive. But to none, I submit, should Brown's strictures justify a two and one-half year jail sentence. Because that is apparently what occurred here, I dissent.

It is essential to put the sentence in this case into perspective. Brown, a teacher and writer, was not yet 24 years old when he wrote the 1969 letter to his draft board, expressing sympathy with point six of the Black Panther Party platform, quoted in the majority opinion. When Brown reappeared in the district court in December 1972 after our remand, he had no criminal record other than his conviction in this case. Up to that time, apparently, he had never engaged in an act of violence, nor had he even been in any serious trouble. Brown came from a good home and had a fine behavior record in school. He frankly admitted his offense, and no one questions that his refusal to report for induction was based on moral grounds. As the majority opinion points out, "the information . . . in the presentence report and accompanying documents . . . is for the most part favorable to Brown." The judge on resentencing also had before him "[a]n impressive array of letters . . . which emphasize [Brown's] sincerity and talents." There was not the faintest suggestion from anyone or in any document or report—other than the letter already referred to—that Brown posed a threat of violence to anyone. The majority picks up a statement by Brown to the Probation Officer, whose report of it is quoted in the margin.[1] As the pre-sentence report indicates, the context of this remark is that Brown would not serve in the armed forces if "his conscience would not permit him to . . . ." This, of course, is why he was being sentenced in the first place, after pleading guilty to failure to report for induction. Any graver implication is unwarranted. Moreover, Brown's conduct, his actual mode of life from March 1969 to January 27, 1972, when he was incarcerated, gave no basis for a belief that he was a threat to society. It is painfully obvious—at least to me— that the judge referred to Brown's political and social views, as expressed in the

---

2. *See* generally, Zavatt, Sentencing Procedure in the United States District Court for the Eastern District of New York, 41 F.R.D. 469 (1966), 54 F.R.D. 327 (1968).

1. The pre-sentence report states, under the heading "Defendant's Statement": "[H]is obedience to the laws of the land is limited, if these laws conflict with certain of his personal beliefs."

letter, when he said that Brown must "take responsibility for saying those words." The majority agrees that a sentence based on "revulsion arising out of Brown's social or political views . . . would be improper." But apparently that is what happened, and the sentence therefore should not stand.

If there is any doubt about the matter, the judge should at least be required to state his reasons for imposing the same two and one-half year sentence that Brown received before. Such a statement, as the majority points out, would "have removed any lingering doubt" that the judge had acted improperly. Moreover, our own prior decision in McGee v. United States, 462 F.2d 243, 247 (1972), furnishes ample precedent for requiring clarification in this case See also United States v. Tucker, 404 U. S. 443, 447–449, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Townsend v. Burke, 334 U. S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); United States v. Malcolm, 432 F.2d 809, 819 (2d Cir. 1970). The majority cites these cases but confines them to their own facts; such a narrow construction is unjustified. *McGee* stands for the proposition—which the other decisions implicitly support—that under some circumstances a sentencing judge may be required to give reasons for his sentence, although this is not ordinarily done. This case is clearly an appropriate instance, since the record certainly suggests that a sentence that we all agree was harsh was imposed for a constitutionally impermissible reason. In a case "not entirely free from doubt," as the majority puts it, this court should not strain to avoid a strong inference of invalidity; if there was a proper reason for the sentence, the judge should state it.

Accordingly, I would remand for resentencing. Alternatively, at the very least, we should require the judge to give "a summary explanation of his reasons" for the sentence. See McGee v. United States, *supra,* 462 F.2d at 247.