**No. 79SA496**

**The People of the State of Colorado v.
Richard Donald Watkins, a/k/a Samuel James Patner**

(613 P.2d 633)

Decided June 23, 1980.                    Rehearing denied July 7, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Mary J. Mullarkey, Solicitor General, David K. Rees, Assistant Attorney General, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Ilene P. Buchalter, Deputy, for defendant-appellant.

*En Banc.*

JUSTICE QUINN delivered the opinion of the Court.

The appellant, Richard Donald Watkins, pled guilty to two felonies and a misdemeanor and received concurrent sentences to the Colorado State Penitentiary of six to ten years, two to five years, and six months respectively. He appeals the sentences as excessive, and also claims entitlement to re-sentencing under the 1977 version of the presumptive sentenc-

ing provisions of House Bill 1589.[1] We affirm the sentence and set forth certain procedures to be followed in felony sentencings subsequent to the date of this decision.

Initially, the defendant was charged under the name of Samuel James Patner in a three-count information with second-degree burglary,[2] third-degree burglary[3] and misdemeanor theft.[4] He applied for a deferred judgment and sentence.[5] The probation department investigated the defendant's application and determined that his true name was Richard Donald Watkins, and that he was an escapee from the Georgia State Penitentiary with a long criminal record. The trial court denied the defendant's application for a deferred judgment and sentence, and permitted the district attorney to file additional counts under the habitual criminal statute,[6] based on Georgia convictions for burglary in 1975 and for possession of heroin in 1977. Plea negotiations ensued and the defendant pled guilty to the counts of second-degree burglary of a building, a class four felony,[7] third-degree burglary, a class five felony,[8] and theft of property under $50 in value, a class three misdemeanor.[9] Prior to the sentencing hearing, a pre-sentence investigation was conducted by the probation department and a pre-sentence report was filed with the sentencing judge. After hearing testimony from the defendant and another witness at the sentencing hearing, the judge sentenced the defendant concurrently to the Colorado State Penitentiary for terms of six to ten years for second-degree burglary, two to five years for third-degree burglary, and six months for misdemeanor theft, and credited against the sentence 189 days spent in pre-sentence confinement.[10] The sentencing judge did not explain the reasons for his sentence, but merely stated that he was sentencing the defendant because of "the offense here in Colorado in view of your background."

---

[1] Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 867.

[2] Section 18-4-203, C.R.S. 1973 (now in 1978 Repl. Vol. 8).

[3] Section 18-4-204, C.R.S. 1973 (now in 1978 Repl. Vol. 8).

[4] Section 18-4-401(2)(a), C.R.S. 1973 (1978 Repl. Vol. 8).

[5] Section 16-7-403, C.R.S. 1973 (1978 Repl. Vol. 8).

[6] Section 16-13-101 et seq., C.R.S. 1973 (1978 Repl. Vol. 8 & 1979 Supp.).

[7] On the date of the offense, January 18, 1978, a class four felony was punishable by a term of one day to ten years. Section 18-1-105, C.R.S. 1973 (1978 Repl. Vol. 8).

[8] A class five felony was punishable by a term of one day to five years. Section 18-1-105, C.R.S. 1973 (1978 Repl. Vol. 8).

[9] A class three misdemeanor was punishable by a fine of fifty to seven hundred fifty dollars, or six months imprisonment, or both. Section 18-1-106, C.R.S. 1973 (1978 Repl. Vol. 8).

[10] The definite terms of six to ten years and two to five years were imposed under section 16-11-101(1)(d), C.R.S. 1973 (1978 Repl. Vol. 8), which provides for a determinate sentence when the defendant has been previously convicted of a felony within five years. A concurrent sentence to the penitentiary for a misdemeanor is authorized in those cases where the misdemeanor sentence is concurrent with a felony sentence. Section 18-1-106, C.R.S. 1973 (1978 Repl. Vol. 8).

166

The defendant contests the propriety of the sentence *i.e.*, the intrinsic fairness or appropriateness of the sentence. *See People v. Malacara,* 199 Colo. 243, 606 P.2d 1300 (1980); section 18-1-409(1), C.R.S. 1973 (1978 Repl. Vol. 8); C.A.R. 4(c) (amended November 13, 1979). The defendant's claim of excessiveness centers on his willingness to lead a productive life and to rehabilitate himself by ending his long dependence on drugs. Before considering the issue of excessiveness, we find it necessary to address a recurrent problem in cases involving appellate review of sentences.

## I. THE REQUIREMENT OF A SENTENCING EXPLANATION

Sentencing by its very nature is a discretionary decision which requires the weighing of various factors and striking a fair accommodation between the defendant's need for rehabilitation or corrective treatment and society's interest in safety and deterrence. *E.g., Triggs v. People,* 197 Colo. 229, 591 P.2d 1024 (1979); *People v. Strong,* 190 Colo. 189, 544 P.2d 966 (1976); *People v. Duran,* 188 Colo. 107, 533 P.2d 1116 (1975); *People v. Campbell,* 188 Colo. 79, 532 P.2d 945 (1975); *People v. Euresti,* 187 Colo. 266, 529 P.2d 1319 (1975). However, the discretion implicit in the sentencing decision is not an unrestricted discretion devoid of reason or principle. On the contrary, the sentencing decision should reflect a rational selection from various sentencing alternatives in a manner consistent with the dominant aims of the sentencing process. The United State Supreme Court in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed.1337 (1949), alluded to the prevailing principle of modern penology that "the punishment should fit the offender and not merely the crime." 337 U.S. at 247, 69 S.Ct. at 1083, 93 L.Ed. at 1342. Modern penology, to a great extent, has rejected the notion that "every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." *Id.*

The Colorado Criminal Code, section 18-1-102.5(1), C.R.S. 1973 (1979 Supp.) acknowledges the manifold purposes of sentencing:

"(a)  To punish a convicted offender by assuring the imposition of a sentence he deserves in relation to the seriousness of his offense;

"(b)  To assure the fair and consistent treatment of all convicted offenders by eliminating unjustified disparity in sentences, providing fair warning of the nature of the sentence to be imposed, and establishing fair procedures for the imposition of sentences;

"(c)  To prevent crime and promote respect for the law by providing an effective deterrent to others likely to commit similar offenses; and

"(d)  To promote rehabilitation by encouraging correctional programs that elicit the voluntary cooperation and participation of convicted offenders."

In recognition of the troublesome problems of sentencing disparity and the need for rationality and fairness in the sentencing process, section 18-1-409, C.R.S. 1973 (1978 Repl. Vol. 8 & 1979 Supp.), grants a defendant

convicted of a felony the right to one appellate review of the propriety of the sentence, "having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based."[11]

The failure of a sentencing judge to state on the record the basic reasons for the selection of a particular sentence creates a burdensom obstacle to effective and meaningful appellate review of sentences.[12] *E.g., United States v. Brown,* 479 F.2d 1170 (2d Cir. 1973); *McGee v. United States,* 462 F.2d 243 (2d Cir. 1972); *ABA Standards Relating to Appellate Review of Sentences* § 2.3, Commentary at 45 (1968); Labbe, *Appellate Review of Sentences: Penology on the Judicial Doorstep,* 68 J. Crim. L. Criminology 122 (1977); Kutlak and Gottschalk, *In Search of a Rational Sentence: A Return to the Concept of Appellate Review,* 53 Nebr. L. Rev. 463 (1974); *Coburn, Disparity in Sentences and Appellate Review of Sentencing,* 25 Rutgers L. Rev. 207 (1971); Doub, *Recent Trends in the Criminal Law,* 46 ABA Journal 139 (1960). If appellate review of felony sentences is to satisfy its stated objectives, it requires that the sentencing judge state on the record the basic reasons for imposing the sentence. *ABA Standards Relating to Appellate Review of Sentences* § 2.3, Commentary at 47 (1968). This requirement is particularly essential in those cases where the sentence involves a very restrictive form of deprivation, such as a term of confinement to a correctional facility.[13]

The requirement of a sentencing explanation for felony sentences serves as an invaluable aid to the appellate court, *ABA Standards Relating to Appellate Review of Sentences* § 2.3, Commentary at 47 (1968), and produces other benefits of comparable significance to the

---

[11] A sentence imposed under the presumptive sentencing provisions of section 18-1-105, C.R.S. 1973 (1978 Repl. Vol. 8) is subject to an automatic non-adversarial appellate review if it is below or above the presumptive range. Section 18-1-409.5, C.R.S. 1973 (1979 Supp.); C.A.R. 4(c) (amended November 13, 1979). A sentence within the presumptive range is not subject to the automatic appeal provisions of section 18-1-409.5, but is appealable under the general provisions of section 18-1-409, C.R.S. 1973 (1978 Repl. Vol. 8 & 1979 Supp.).

[12] It has been estimated that as many as half of all appeals are taken because the defendant is dissatisfied, not necessarily with the conviction, but with the sentence. *ABA Standards Relating to Appellate Review of Sentences,* Introduction at 3 (1968).

[13] By the phrase "term of confinement" we mean those sentences established for felony offenses by section 18-1-105, C.R.S. 1973 (1979 Supp.), including the sentences authorized when exceptional mitigating circumstances exist. *See generally, ABA Standards Relating to Sentencing Alternatives and Procedures* § 2.5.
By "correctional facility" we mean the state penitentiary, the state reformatory, and any other facility under the supervision of the Department of Corrections for holding in custody convicted felony offenders pursuant to a sentence, as well as residential or non-residential community correctional facilities for felony offenders sentenced there for at least the minimum term authorized for felony offenses under section 18-1-105, C.R.S. 1973 (1979 Supp.).

criminal justice system. Such explanation will serve as "'a powerful safeguard against rash and arbitrary decisions' at this crucial stage of the criminal process when the defendant's liberty is at stake." *United States v. Brown, supra* at 1172. It will foster consistency and fairness by minimizing the risk that the sentencing judge might have acted on inaccurate or unreliable information. *Id*. It will assist the defendant in making an informed decision on whether to seek an appellate review of his sentence, and thereby afford him an opportunity to assert grievances he may have regarding his sentence. *ABA Standards Relating to Appellate Review of Sentences* § 1.2(ii). Additionally, a sentencing explanation in many cases have therapeutic value for the defendant. *See* Robinson, *The Defendant Needs to Know,* Fed. Probation, December 1962 at 3; *ABA Standards Relating to Appellate Review of Sentences* §2.3, Commentary at 46 (1968). And also, it may prove beneficial to correctional authorities in determining the place and type of institutional confinement suited to the defendant's correctional needs. *United States v. Brown, supra* at 1173; *ABA Standards Relating to Appellate Review of Sentences* § 2.3, Commentary at 46 (1968).

■ Therefore, we require that hereafter in felony convictions involving the imposition of a sentence to a correctional facility the sentencing judge state on the record the basic reasons for the imposition of sentence. The statement of reasons need not be lengthy, but should include the primary factual considerations bearing on the judge's sentencing decision.[14]

## II. THE ISSUE OF EXCESSIVENESS

In this case, the trial judge did not state the reasons for his sentencing decision. Therefore, we must search the record and determine whether that record establishes a clear justification for the imposition of concurrent sentences with a maximum of six to ten years. *E.g., People v. Strong, supra; People v. Duran, supra.*

The charges in this case arose out of a burglary by the defendant and two others of a business establishment in Greeley, Colorado in the early morning hours of January 18, 1978. Prior to the burglary the defendant

---

[14] Given the many factual situations coming before the sentencing judge, it is impossible to catalogue here all the factors that are significant to the sentencing process. The following are merely illustrative of some of the more common considerations: the gravity of the offense in terms of harm to person or property; the gravity of the offense in terms of the culpability requirement of the law; the defendant's history of prior criminal conduct; the degree of danger the defendant might present to the community if released forthwith; the likelihood of future criminality in the absence of corrective incarceration or treatment; the prospects for rehabilitation under some less drastic sentencing alternative, such as probation; and the likelihood of depreciating the seriousness of the offense were a less drastic sentencing alternative chosen.

A proper and fair sentence is one that can be reasonably explained. *ABA Standards Relating to Appellate Review of Sentences* § 2.3, Commentary at 45 (1968). A sentence which, without explanation, may seem whimsical, may in fact have a basis in reason and fairness that becomes apparent upon explanation.

and his two companions had been drinking in a nearby tavern. The defendant admitted to drinking alcoholic beverages and liquid opium. A plan was devised to gain entry into the building and break into a safe located inside. After the tavern closed the defendant and his companions proceeded to the building where they gained access to the roof by climbing up a conveyor belt, and then entered the building through an opening in the roof. Once inside the building, one of them broke into a pop machine. While the burglary was in progress, the police arrived and apprehended the defendant on the roof of the building.

The defendant's social history depicts a bleak picture of repeated criminal conduct since the age of eighteen years. The defendant was twenty-five years old when he was sentenced in this case. At the age of eighteen he was charged with and convicted of three burglaries and was sentenced to the Georgia Industrial Institute for three years. He was paroled in April 1974, about a year after his incarceration, and shortly thereafter was charged with another burglary. He pled guilty to this offense in 1975 and received an indeterminate sentence not to exceed six years under the Georgia Youthful Offender's Act. In April 1976 he was granted a conditional release, which was subsequently revoked in December 1976 upon his arrest for possession with intent to distribute heroin. The defendant was then remanded to the Georgia State Penitentiary to serve the remainder of the indeterminate sentence imposed in 1975. He pled guilty to possession with intent to distribute heroin in February 1977 and he received a split sentence of six years confinement plus four years probation. He was received at the Georgia Correctional Institution in May 1977 and was later placed in a work camp. He escaped on October 3, 1977, and eventually made his way to Greeley, Colorado.

At the sentencing hearing in this case the defendant, although a young man of 25 years, had already accumulated five prior felony convictions on his record — four burglary convictions and one narcotics conviction. Were it not for the defendant's extensive criminal record, we might well take a different view of the sentence. Under the circumstances of this case, however, we conclude that the pre-sentence report and other evidence in the record afford substantial justification for the sentences imposed.

### III. THE ISSUE OF RE-SENTENCING

The defendant also claims that he is entitled to re-sentencing under the presumptive-sentence provisions of House Bill 1589, Colo. Sess. Laws 1977, ch. 216, 18-1-105 at 867. *People v. McKenna,* 199 Colo. 452, 611 P.2d 57 (1980), resolved these issues adversely to the defendant. *McKenna* held that the legislative postponement of the effective date of House Bill 1589 comported with the separation of powers doctrine under Article III of the Colorado Constitution, and that the prospective provisions of section 25 of House Bill 1589, as amended in March 1979,

Colo. Sess. Laws 1979, ch. 157, sec. 25 at 672, did not infringe upon the rule-making power of this court under Article VI, Section 21, of the Colorado Constitution.

The judgment is affirmed.