**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Bobby HUDSON, Defendant-Appellant.**

**No. 84CA0305.**

Colorado Court of Appeals, Div. I.

July 18, 1985.

Rehearing Denied Aug. 8, 1985.

Certiorari Denied Nov. 18, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David Vela, Colorado State Public Defender, Douglas Barnes, Deputy State Public Defender, Denver, for defendant-appellant.

PIERCE, Judge.

Defendant, Bobby Hudson, pled guilty to second degree murder, a class 2 felony, and received a sentence of 24 years imprisonment. The presumptive range of sentences for this crime is 8 to 12 years. He appeals this sentence as excessive. We vacate the sentence and remand.

After a preliminary hearing, defendant was bound over for trial on charges of felony murder, aggravated robbery, and commission of violent crimes, and a co-defendant was bound over on these same counts as well as that of premeditated murder. These criminal charges against defendant resulted from a homicide and robbery in which the defendant and his co-defendant, both age 17, had participated in varying degrees.

On the night of the incident which led to these charges, the co-defendant, driving his father's car, picked up the defendant at defendant's home. The co-defendant showed the defendant a .22 caliber revolver belonging to his father and suggested some target practice.

After the target practice, the co-defendant decided to carry out a highway robbery, to which the defendant agreed. Co-defendant's plan was to park the car on the shoulder of the highway, act as if it were broken down, and rob anyone who stopped. Eventually, a truck stopped, but the driver did not exit his vehicle, and he drove away. During this time, defendant stayed in the car, apparently hiding.

Later, at another spot, the victim did stop, and as he leaned over the radiator, co-defendant, without provocation, shot him four times. After either three or four of

the shots, the defendant got out of the car and saw the co-defendant shoot the victim one more time. According to defendant, he "could not believe what was happening," and jumped back into the car and waited for the co-defendant. The co-defendant took the victim's wallet and gave defendant $20 of the money.

Defendant stated that he agreed to remain silent because he was afraid that he would be next to be shot. The following day, defendant told a friend and co-employee what had happened. According to the friend, the defendant was pale, scared, and shocked at what had happened. Defendant said he had nightmares about the incident. However, he did not go to the police, and several weeks passed before his friend reported the conversation to police.

At the sentencing hearing, a clinical psychologist presented a psychological and emotional analysis of the defendant and his personality. According to that analysis, defendant's personality had three major characteristics: immaturity, dependency, and extreme conformism. As a result, the defendant was strongly oriented toward following instructions and doing what was expected of him; also, he was a nonviolent person, one who was more apt to withdraw and deny the existence of a problem rather than express anger or show aggression. In the psychologist's opinion, defendant's passivity in going along with the co-defendant and his hiding in the back seat of the car were all consistent with his basic personality and his dependency and conformism. The psychologist further opined that defendant's imprisonment and contact with the legal system as a result of this homicide has provided him with a keen awareness of how to stay away from anything that is even mildly illegal in the future, and therefore, he suggested a reformatory sentence.

Independent of the psychological report, the probation department completed a presentence investigation which concluded that, although the defendant was aware that the robbery was going to take place, he was not an active participant in the resulting murder, and that defendant is a follower, a nonaggressive and passive individual. The probation officer therefore recommended a sentence of 12 years imprisonment. The probation officer also opined that the set of aggravating circumstances found applicable to the co-defendant, who was also sentenced to 24 years imprisonment, were not applicable to defendant.

The presentence report also indicated that defendant had no previous criminal record, the present case being defendant's first criminal prosecution.

In arriving at its sentence, the trial court found three mitigating factors:

"(a) Defendant's youth, especially his follow-the-leader mentality; (b) the defendant's lack of any prior record of criminal behavior; (c) the absence of an active part in the killing of [the victim], and the unlikelihood of his further involvement in crime or crimes of violence."

The trial court then proceeded to list in its written order the following "extraordinary aggravating circumstances:"

"(a) the facts brought forth about the circumstances of the crime demonstrate that all elements relating to the crime of felony murder were present; the defendant was able to avoid what the court believes was probable conviction of the first degree murder charge by pleading guilty to the charges of the amended information; it is self evident that the actual crime committed by defendant is more aggravated than the charge to which he pleaded guilty, and the facts surrounding the actual acts committed by defendant must be considered by the court; (b) the defendant was an active participant in the planning and execution of the robbery which culminated in [the victim's] death; he was involved in the planning of two unsuccessful robbery attempts the same evening this crime was perpetrated; (c) he understood full well that the victim would be particularly vulnerable; (d) he understood that a loaded, deadly weapon was to be used in the

commission of the robberies, and, having earlier fired the weapon himself, it is inconceivable to the court that he could not have known that the weapon would not be used in the robbery with the concomitant risk of death to the victim; (e) the defendant evinced extreme callousness in simply standing by and watching the co-defendant shoot the victim while the victim was lying on the ground, and then dividing up the money taken from the victim's body."

Based on these findings, the trial court concluded that the facts surrounding the homicide revealed an extremely heinous crime in which the defendant was "in large part an active participant," that a "nonaggravated sentence would depreciate the seriousness" of defendant's taking advantage of a helpless good samaritan, and that it was evident from the psychologist's report that defendant still wishes to evade responsibility for the robbery and the killing of the victim, thus showing no convincing demonstration of remorse or repentence. The trial court also concluded that defendant's good chance of rehabilitation, though confirmed by his lack of a prior record, "may be short-circuited by his failure to accept responsibility for the robbery and death of [the victim]."

■ Although the sentence to be imposed represents a discretionary decision generally left to the trial court, the discretion exercised in making that decision is not unrestricted and is properly reviewable. *People v. Watkins*, 200 Colo. 163, 613 P.2d 633 (1980); *see* § 18–1–409(1), C.R.S. (1984 Cum.Supp.); *People v. Edwards*, 198 Colo. 52, 598 P.2d 126 (1979).

■ Our review of the sentence is guided by the general sentencing objectives set forth in the ABA, *Standards Relating to Appellate Review of Sentences*, Standard 20–1.2 (1982):

"(a) to *correct a sentence which is excessive* in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

(b) to *promote respect for law* by correcting abuses of sentencing power and *by increasing the fairness of the sentencing process;*

(c) to *facilitate* the possible *rehabilitation* of an offender by reducing manifest and unwarranted inequalities among the sentences of comparable offenders;

(d) to promote the development and application of criteria for sentencing which are both rational and just." (emphasis added)

■ In measuring defendant's severe sentence by these criteria, we find that it lacks the clear justification which is required. *See People v. Phillips*, 652 P.2d 575 (Colo.1982) (Lohr, J., specially concurring); *People v. Edwards, supra.*

Although there is no statutory definition as to the exact meaning of "extraordinary aggravating circumstances," some indication of the meaning intended by the General Assembly is found in § 18–1–105(9)(a), C.R.S. (1984 Cum.Supp.). *See People v. Phillips, supra.* None of the specific extraordinary circumstances indicated in that statutory section are present here. More importantly, the record does not support the trial court's findings and conclusions.

First, the trial court's conclusion that the defendant was "in large part an active participant" is contradicted by the court's own prior finding of an absence of defendant's connection with the gun or the actual execution of the victim, and it is contradicted by the evidence which establishes defendant as a follower of the co-defendant, rather than as an active planner. Second, the record does not show defendant acting as a callous bystander to the shooting, rather it indicates defendant coming out of hiding upon hearing gunshots and almost immediately returning into hiding.

■ Finally, although the trial court admitted that defendant was a good candidate for rehabilitation, its imposition of the maximum sentence beyond the presumptive range indicates the sole purpose of the sentence was for punishment to the exclusion of any meaningful rehabilitation. *See*

*People v. Martinez*, 628 P.2d 608 (Colo. 1981). Here, such maximization of one sentencing objective is not an acceptable balancing of all of the sentencing considerations. *See People v. Duran*, 188 Colo. 207, 533 P.2d 1116 (1975).

The absence of any prior record by defendant here distinguishes this case from cases such as *Flower v. People*, 658 P.2d 266 (Colo.1983). In addition, defendant's lack of active participation in the shooting of the victim distinguishes this case from that of *People v. Euresti*, 187 Colo. 266, 529 P.2d 1319 (1975), in which the aggravated nature of Euresti's forced rape and vicious assault on a young woman justified the severe sentence. Similarly, *People v. Wylie*, 44 Colo.App. 38, 605 P.2d 494 (1980) is distinguishable in that Wylie threatened the victim, obtained a gun, and then shot the victim after traveling to her home.

We conclude that the circumstances of the offense and the defendant's record and personality as shown by the psychological analysis and presentence report negate any basis for the imposition of the same maximum sentence outside the presumptive range that was imposed upon the active perpetrator of the murder. While the nature of the offense indicates the need for a significant period of incarceration, the present sentence does not indicate that any mitigating factors were taken into account. Defendant's opportunities for rehabilitation would certainly be enhanced by a reduction in the sentence now imposed. Such a reduction, in our view, will not erode the underlying societal needs of deterrence and public protection. *See People v. Strong*, 190 Colo. 189, 544 P.2d 966 (1976).

Accordingly, the sentence is vacated, and the cause is remanded to the trial court with directions to impose a sentence of less than the maximum allowable above the presumptive range, taking into account the mitigating factors found by the trial court and set forth in this opinion.

BERMAN and STERNBERG, JJ., concur.