**Vincent WILSON, Petitioner,**

**v.**

**The PEOPLE of the State of Colorado, Respondent.**

**No. 86SC29.**

Supreme Court of Colorado,
En Banc.

Dec. 14, 1987.

Rehearing Denied Jan. 25, 1988.

---

David F. Vela, Public Defender, Douglas D. Barnes, Deputy Public Defender, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia Jones, Asst. Atty. Gen., Denver, for respondent.

LOHR, Justice.

We granted certiorari in this case to determine whether a defendant is entitled to be heard, to present evidence, and to confront the witnesses against him prior to the revocation of his placement in a community corrections facility for violation of a condition of that placement. The defendant contends that the language of sections 17–27–103(3), 8A C.R.S. (1986), and 17–27–114, 8A C.R.S. (1986), as well as the due process clause of the fourteenth amendment require that an offender be afforded such a hearing. The trial court determined that neither statutory law nor procedural due process necessitates such a hearing. On appeal, the Colorado Court of Appeals affirmed. *Wilson v. People*, 717 P.2d 982 (Colo.App.1985). We hold that section 17–27–114, 8A C.R.S. (1986), does contemplate that an informal hearing will be conducted on the issues of whether the defendant violated a condition of his placement and whether that placement should be revoked, and that the defendant has the right to participate in that hearing. Accordingly, we reverse the judgment of the court of appeals.

## I.

The defendant, Vincent A. Wilson, was charged in Denver District Court with one count of second degree burglary of a dwelling, § 18–4–203(1), (2), 8B C.R.S. (1986), and one count of theft, § 18–4–401(1)(c), (2)(c), 8B C.R.S. (1986). Pursuant to a plea agreement, the information was amended to include a third count, second degree burglary of a building, § 18–4–203(1), 8B C.R.S. (1986). The defendant entered a plea of guilty to this third count, and the remaining charges were dismissed. Wilson was granted leave to apply for probation.

At the probation hearing on May 16, 1984, Wilson was sentenced to community corrections for a period of two years plus

one year of parole.[1] The defendant signed a statement acknowledging that he understood the conditions of his placement, including the fact that if he left the community corrections facility in an unauthorized manner, felony escape charges would be filed.

The Denver Probation Department filed a request for an arrest warrant on August 27, 1984, alleging that Wilson had failed to return to the community corrections facility on August 24, 1984, a violation of a condition of his placement. The trial court issued the warrant on August 28, 1984. The defendant was subsequently apprehended and confined in the Denver County Jail. Thereafter, Wilson appeared in Denver District Court for consideration of his unauthorized departure from community corrections.

Wilson argued that he was entitled to be heard on the issue of revocation of his placement in community corrections as a matter of due process of law, and that without his participation in the hearing, there was a risk that he would be erroneously resentenced on the basis of an unverified report. The prosecution responded that section 17–27–103(3) vests authority in the community corrections board to reject any offender after acceptance, and therefore a court does not have the authority to inquire further than to determine that the community corrections board is no longer willing that the offender be continued in community corrections.

In lieu of testimony by the probation officer, a report signed by that officer had been filed with the court. The report stated that the defendant had failed to return to the community corrections facility on August 24, 1984, and had made no effort to contact the probation officer until the defendant was apprehended on September 6th. The probation officer reported that he was filing felony escape charges against Wilson and recommended that the defendant's community corrections placement be

changed to a sentence to the department of corrections.

The court did not allow the defendant to be heard or to present evidence regarding the allegations against him, and he was afforded no opportunity to cross-examine adverse witnesses. Instead, the court relied on the probation officer's report to find that the defendant had violated a condition of his placement and was no longer suitable for continued placement in community corrections. Pursuant to section 17–27–103(3), the court resentenced Wilson to the department of corrections for two years plus one year of parole, the same term imposed in his original sentence, with credit awarded for the 112 days served in community corrections. Additionally, the court noted that there was "not any due process violation involved pursuant to the statute."

Wilson appealed from the trial court's judgment. The court of appeals affirmed the revocation order, stating that the trial court had properly followed the procedures outlined in sections 17–27–103 and 17–27–114 before revoking the defendant's sentence to community corrections. *Wilson v. People*, 717 P.2d 982, 983 (Colo.App.1985). The court of appeals also noted that the defendant had received a full hearing when his sentence was first imposed. The defendant then petitioned for certiorari review, and we granted that petition.

## II.

Community corrections programs provide "the sentencing judge with a broader range of alternatives and with a sentencing medium that is more severe than probation, but not as harsh as incarceration." *People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 36, 575 P.2d 4, 6 (1978). Article 27 of Title 17, 8A C.R.S. (1986), sets forth the statutory framework established to regulate community correctional facilities and programs. A community correctional facility or program is defined in section 17–27–102(1), 8A C.R.S. (1986), as:

---

**1.** Section 17–27–105(5), 8A C.R.S. (1986), provides that "[a] person sentenced directly to a residential community correctional facility shall, if the sentencing judge directs, be subject,

after release from such facility, to up to one year of supervision under the direction of the district probation office of the sentencing court...."

a community-based or community-oriented facility or program: Which is operated either by a unit of local government, the department [of corrections], a private nonprofit agency or organization, or any corporation, association, or labor organization; which may provide residential accommodations for offenders; and which provides programs and services to aid offenders in obtaining and holding regular employment, in enrolling in and maintaining academic courses, in participating in vocational training programs, in utilizing the resources of the community in meeting their personal and family needs and providing treatment, and in participating in whatever specialized programs exist within the community.

Community corrections programs utilize a variety of means, including halfway houses and work release programs, to enable offenders to reside in the community. The basic objective of such programs is "to limit confinement to the extent necessary to assure reasonable supervision while permitting a gradual reintegration of the offender into the society to which the offender would eventually return." *American Bar Association Standards for Criminal Justice*, Sentencing Alternatives and Procedures, Standard 18-2.4, Commentary at 102 (1986 Supp.).

Each program is governed by a corrections board, § 17–27–102(2), 8A C.R.S. (1986), which may establish standards of operation, develops procedures for screening eligible offenders, and "has the authority to accept, reject, or reject after acceptance the placement of any offender," § 17–27–103(3). Placements in community corrections programs are not final until the corrections board accepts the offender.[2] An offender may be sentenced to a community corrections program directly pursuant to section 17–27–105(1)(a), 8A C.R.S. (1986), as Wilson was in this case. Alternatively, an offender may be placed in a community corrections program as a condition of probation, § 16–11–204(2)(c), 8A C.R.S. (1986), or may be transferred to the program by the department of corrections pursuant to contractual authorization, § 17–27–106 (4)(a), 8A C.R.S. (1986).

Not all persons convicted of a crime are eligible for community corrections placement. Section 17–27–102(4), 8A C.R.S. (1986), excludes from placement in community corrections those who have committed a crime of violence or a class one misdemeanor in which a deadly weapon was used. Some offenders who are statutorily ineligible for probation, however, may still be sent to a community corrections facility in lieu of prison. *People ex rel. VanMeveren v. District Court*, 195 Colo. at 36–37, 575 P.2d at 6.

### III.

We shall first address the question of whether the statutory provisions require a hearing before revocation of a community corrections placement for violation of a condition of that placement. Wilson argues that the language of sections 17–27–103(3) and 17–27–114 contemplates a hearing to resolve whether an offender is to be removed from community corrections for violating a rule or condition of his placement. The People contend that the statutory language, when given its plain meaning, does not provide for a hearing prior to removal from a community corrections facility, and that this court should not attempt to read such a requirement into the statutory scheme. Resolution of this issue requires careful consideration of the two statutes and their interrelationship.

Section 17–27–103(3) states, in pertinent part:

The corrections board has the authority to accept, reject, or reject after acceptance the placement of any offender in its community correctional facility or program pursuant to any contract or agreement with the department [of corrections] or a judicial district. If an offender is rejected by the corrections board after initial acceptance, the offender

---

**2.** The General Assembly provided that each governing board would have veto power over who can be placed in its program in order to ensure "citizen input." Cherner, *Colorado Felony Sentencing—An Update*, 14 Colo.Law. 2163, 2166 (1985).

shall remain in the facility or program for a reasonable period of time pending receipt of appropriate orders from the sentencing court or the department for the transfer of such offender. The sentencing court is authorized to make appropriate orders for the transfer of such offender to the department [of corrections] and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

This section gives a corrections board the discretion to determine which offenders it will accept in its program and authorizes the board to reject an offender even after initial acceptance. Under this provision, once a corrections board has made a decision to reject an offender placed by the court, the sentencing court is left to resentence that offender, adopting any alternative sentence that might originally have been imposed, including a sentence to another community corrections facility that agrees to accept the offender.

Wilson's alleged violation of the conditions of his placement and subsequent removal from the program perhaps could be characterized as a rejection after acceptance pursuant to section 17–27–103(3).[3] The sentencing court expressly relied on this statute in resentencing Wilson without allowing him an opportunity to be heard on the placement revocation. However, section 17–27–114 also deals with the removal of offenders from community corrections and provides more specifically for instances in which removal is contemplated because an offender has allegedly violated a rule or condition of placement:

(1) Where the administrator of a community correctional facility or any other appropriate supervising authority has cause to believe that an offender placed in a community correctional facility has violated any rule or condition of his placement in that facility or any term of his postrelease supervision under section 17–27–105 or cannot be safely housed in that facility, the administrator or other authority shall certify to the appropriate judicial or executive authority the facts which are the basis for his belief and execute a transfer order to any sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer which authorizes said sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer to transport the offender to the county jail in the county in which the facility is located where he shall be confined *pending a determination by the appropriate court or executive authorities as to whether or not the offender shall remain in community corrections.* Offenders so confined may apply for bond only where they have been confined due to an alleged violation of a condition of the postrelease supervision contemplated by section 17–27–105.

(2) If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to make appropriate orders for the transfer of such offender from the county jail to a correctional facility and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

(Emphasis added.)

Although section 17–27–114 does not explicitly require a hearing, and does not specify the burden and quantum of proof, the need for a hearing of some sort is implicit in the language of the statute. The statute provides that the administrator of a community correctional facility must certify to the sentencing court the facts underlying the alleged violation of a rule or condition of placement,[4] and must also

---

3. Although the record does not contain explicit evidence that the corrections board rejected Wilson's continuing placement after his departure from the community correctional facility, it may be a fair inference from the record that such was the case.

4. Section 17–27–114 provides for the facts to be certified "to the appropriate judicial or executive authority." We construe this provision to require that the certification be made to the sentencing court when the placement was made by that court, and to the department of corrections when the offender was transferred to com-

transfer the offender to the county jail pending resolution of the case.[5] If the administrator could simply remove the offender from the program without establishing that there had been a violation, there would be no need to provide the sentencing court with the underlying facts. The statute further requires the court to make a determination "whether or not the offender shall remain in community corrections." This language clearly contemplates that the court will inquire into the nature of the alleged violation of a rule or condition of the offender's placement to assist it in making the requisite determination. In fact, the statute provides no other explicit criteria by which the sentencing court is to be guided in making its determination.

The "determination" required by the statute is similar to that required by the United States Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 479–80, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972), in connection with revocation of parole:

> The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?

Similarly, the language of section 17–27–114 seems to require consideration of both questions. The requirement for certification of facts to the sentencing court implies that the court will make a factual determination whether a rule or condition of the offender's placement has been violated.

Once the factual issue has been addressed, the statute also expressly requires the court to determine whether the offender should remain in a community corrections facility or should be resentenced. Although pursuant to section 17–27–103(3), the board of the corrections facility where the offender was originally placed retains the discretion to reject the offender regardless of the outcome of the hearing, if the court determines after holding a hearing that the offender should be allowed to remain in community corrections, it can then determine whether other facilities will accept the offender.

The proceedings required to enable a court to perform its statutory responsibilities under section 17–27–114 may be limited and informal, but a hearing sufficient to assure that the court's determinations will be made on an informed basis must be conducted. In keeping with the traditions of our adversary system, both the People and the defendant must be given an opportunity to participate in such a hearing. This in turn requires that the defendant receive timely notice of the hearing and of the nature of the alleged violation. The People should have the burden of proving the alleged violation by a preponderance of the evidence. *Cf.* § 16–11–206, 8A C.R.S. (1973) (setting forth a similar burden of proof for probation revocation proceedings). The judge should have discretion to relax the rules of evidence to permit reliable information to be received even though it might not meet the formal requirements of the Colorado Rules of Evidence. *Cf. People v. Atencio*, 186 Colo. 76, 78–79, 525 P.2d 461, 462–63 (1974) (court not bound by the strict rules of evidence in probation revocation proceeding).

---

munity corrections by that department rather than by the sentencing court. In the latter case, the department of corrections makes the "determination" concerning "whether or not the offender shall remain in community corrections," as required by § 17–27–114(1). In the event that retention of the offender in a community corrections program is determined by the court to be inappropriate, resentencing by the court is required. § 17–27–114(2). Resentencing is not necessary when a community corrections placement by the department of corrections is revoked; in such a case the offender simply serves the balance of the sentence originally imposed by the sentencing court.

5. Wilson spent the time pending a final resolution of his placement revocation in the county jail as provided under § 17–27–114, rather than in the community corrections facility as provided under § 17–27–103 with respect to offenders whose placement is rejected by the corrections board after acceptance pursuant to § 17–27–103(3).

At a minimum, the defendant should be given the right to present evidence concerning whether he violated a rule or condition of his placement and to confront any witnesses against him unless good cause is shown that a substantial risk of serious harm would exist if such confrontation were allowed. *Cf. Morrissey v. Brewer*, 408 U.S. at 489, 92 S.Ct. at 2604 (relating to parole revocation proceedings); *People v. Varner*, 181 Colo. 146, 149, 508 P.2d 390, 391 (1973) (the requirements set out in *Morrissey v. Brewer* apply equally to the revocation of probation; the probationer shall be allowed "to be heard in person, present evidence in his own behalf, and confront and examine adverse witnesses"); *American Bar Association Standards for Criminal Justice*, Sentencing Alternatives and Procedures, Standards 18–7.3, –7.5 (1986 Supp.). Even if the violation is proven, the offender should be given an opportunity to explain the circumstances surrounding the alleged violation and to present evidence of any other mitigating factors based on facts and circumstances that have developed since his original placement in community corrections, to assist the court in determining whether he should remain in community corrections.

In addition, it is important to note that both section 17–27–103(3) and section 17–27–114(2) vest in the court the authority to resentence a judicially-placed offender if his placement in a community corrections program is terminated by the corrections board under section 17–27–103(3) or by the court under section 17–27–114(1). While sentencing is a discretionary decision, "the discretion implicit in the sentencing decision is not an unrestricted discretion devoid of reason or principle." *People v. Watkins*, 200 Colo. 163, 166, 613 P.2d 633, 636 (1980). The United States Supreme Court has recognized "the critical nature of sentencing in a criminal case," *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967), even in a case where the defendant was originally placed on probation and was being sentenced following a revocation of probation, *id.*

The fact that a defendant had a full hearing prior to his initial sentencing does not obviate the need for a hearing at resentencing, since facts and circumstances that arise after the original hearing may be relevant to resentencing. The defendant should have the opportunity to present evidence of any such facts and circumstances in mitigation and to argue the relevance of such information with respect to the sentence to be imposed. Pursuant to section 16–11–102(5), 8A C.R.S. (1986), before imposing sentence:

> the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment. The prosecution also shall be given an opportunity to be heard on any matter material to imposition of sentence.

Thus the resentencing procedure under either section 17–27–103(3) or 17–27–114(2) requires an opportunity for the defendant to present relevant information and to be heard.

In summary, we conclude that the defendant was entitled to a hearing before his community corrections placement could be revoked because of an alleged violation of a rule or condition of placement. The language of section 17–27–114(1) requires the sentencing court to make a "determination" as to the existence of the alleged violation and, if the violation is established, whether an offender should remain in community corrections, rather than to remove him summarily from the program. Our resolution of this case on the basis of statutory construction makes it unnecessary to reach the issue of whether constitutional requirements of due process of law also mandate a hearing.

We reverse judgment of the court of appeals and remand this case to that court with directions to return it to the district court for a hearing consistent with the views expressed in this opinion.

ERICKSON, J., dissents and VOLLACK, J., joins in the dissent.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the majority's interpretation of sections 17–27–

103(3), –114, 8A C.R.S. (1986), goes beyond the plain meaning of the statute and is not consistent with accepted rules of statutory construction. *People v. District Court,* 713 P.2d 918 (Colo.1986); *Colorado Dep't of Social Serv. v. Board of County Comm'rs of Pueblo County,* 697 P.2d 1 (Colo.1985). The requirement of a hearing is not part of the statutory scheme and casts an additional burden on the courts and the correctional system.

Vincent Wilson was charged with second-degree burglary of a dwelling, section 18-4-203, 8 C.R.S. (1973 & 1983 Supp.), and theft, section 18-4-401, 8 C.R.S. (1973). The prosecution later amended the information to include a third count, second-degree burglary of a building, section 18-4-203, 8 C.R.S. (1973 & 1983 Supp.). Pursuant to a plea agreement, Wilson pled guilty to count three, and the first two counts were dismissed.

After a full hearing, Wilson's request for probation was denied and he was sentenced to community corrections for a period of two years and one year of parole. He signed a statement acknowledging that he understood the conditions of his placement, including the condition that if he left the facility without authorization felony escape charges would be filed against him.

On August 28, 1984, a warrant was issued for Wilson's arrest following his unauthorized absence from the community corrections facility. He was subsequently apprehended and confined in the Denver County jail. A hearing was held in Denver District Court to determine whether Wilson violated the conditions incident to the community corrections program.

At the hearing, which was attended by Wilson and his counsel, the prosecution presented a probation report alleging that the defendant failed to return to the corrections facility on August 24, 1984, and made no effort to contact his probation officer until he was apprehended on September 6, 1984. The court concluded that Wilson had violated the terms of his placement in community corrections by failing to return, *see* sections 17-27-108, –114, and resentenced him to the department of corrections for two years plus one year of parole, the original sentence imposed on Wilson, *see* section 17-27-103(3).

Under the plain language of sections 17-27-103(3), –114, the defendant had no statutory or due process right to an evidentiary hearing and the court did not err in denying him an opportunity to present evidence contesting the probation officer's report. Section 17-27-103(3) states in pertinent part:

> *The corrections board has the authority to accept, reject, or reject after acceptance the placement of any offender in its community correctional facility or program pursuant to any contract or agreement with the department or a judicial district.* If an offender is rejected by the corrections board after initial acceptance, the offender shall remain in the facility or program for a reasonable period of time pending receipt of appropriate orders from the sentencing court or the department for the transfer of such offender. The sentencing court is authorized to make appropriate orders for the transfer of such offender to the department and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

(Emphasis added.) *See* section 17-27-113(2). The section gives the corrections board the authority to reject the placement of any offender in its community corrections facility. It makes no provision for a hearing to review the board's decision to reject an inmate. When the board rejects an offender, the court must transfer him from community corrections and determine whether to impose the original sentence or some lesser penalty.

Section 17-27-114 states:

(1) Where the administrator of a community correctional facility or any other appropriate supervising authority has cause to believe that an offender placed in a community correctional facility has violated any rule or condition of his placement in that facility or any term of his postrelease supervision under section

17–27–105 or cannot be safely housed in that facility, the administrator or other authority shall certify to the appropriate judicial or executive authority the facts which are the basis for his belief and execute a transfer order to any sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer which authorizes said sheriff, undersheriff, deputy sheriff, police officer, or state patrol officer to transport the offender to the county jail in the county in which the facility is located where he shall be confined pending a determination by the appropriate court or executive authorities as to whether or not the offender shall remain in community corrections. Offenders so confined may apply for bond only where they have been confined due to an alleged violation of a condition of the postrelease supervision contemplated by section 17–27–105.

(2) If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to make appropriate orders for the transfer of such offender from the county jail to a correctional facility and to resentence such offender and impose any sentence which might originally have been imposed without increasing the length of the original sentence.

Section 17–27–114, like section 17–27–103(3), does not expressly provide for an evidentiary hearing to review allegations that an offender has violated any rule or condition of his placement. Under the plain language of the statute, the appropriate court or executive authorities must decide, based solely upon the facts certified by the administrator, whether the offender shall remain in community corrections or be resentenced to serve at a corrections facility.

The General Assembly's decision not to provide for an evidentiary hearing prior to the removal of an offender from a community corrections facility is manifested by its express exclusion of article 27, title 17, from the provisions of the State Adminis-

trative Procedure Act, article 4, title 24, 10 C.R.S. (1982 & 1987 Supp.) (Act).[1] Section 24–4–105, 10 C.R.S. (1982 & 1987 Supp.), of the Act, specifies the procedures to be employed in agency adjudicatory hearings. The General Assembly's exclusion of article 27, title 17, from the procedural requirements of section 24–4–105 indicates that it considered whether an evidentiary hearing should be accorded an offender prior to his removal from a community corrections facility. The failure of title 17 to expressly provide for a hearing, identify its procedural requirements, and state the appropriate burden of proof, suggests that the General Assembly decided not to provide the offender with a statutory right to an adversarial or evidentiary hearing. *See Equal Employment Opportunity Comm'n v. Continental Oil Co.,* 548 F.2d 884 (10th Cir.1977) (statutes are to be given such effect that no clause, sentence, or word is rendered superfluous, contradictory, or insignificant); *People v. District Court,* 713 P.2d 918 (Colo.1986) (same).

An offender also has no due process right to an evidentiary hearing before he is removed from a community corrections facility. Only a limited range of interests fall within the ambit of the fourteenth amendment. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Protected liberty interests may arise from two sources, the due process clause and state law. *Id.* Under the due process clause, " '[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.' " *Id.* at 468, 103 S.Ct. at 869 (quoting *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)); *see Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); J. Nowak, R. Rotunda & J. Young, *Constitutional Law,* ch. 15, sec. III, at 566 n. 27 (2d ed. 1983).

1. Section 17–27–112 provides: "The provisions of this article shall not be subject to the 'State Administrative Procedure Act,' article 4 of title 24, C.R.S."

The due process clause does not require a hearing prior to Wilson's removal from the community corrections facility. He received a fair trial and a full hearing both when he was sentenced and when the original sentence, reduced by the time he served in the community corrections program, was reimposed. Therefore, his transfer does not trigger the due process clause. *See Olim v. Wakinekona*, 461 U.S. at 238, 103 S.Ct. at 1742 (state prisoner transferred from prison in Hawaii to maximum security prison in California not entitled to hearing); *Montanye v. Haymes*, 427 U.S. at 236, 96 S.Ct. at 2544 (prisoner transferred to different prison facility not entitled to hearing).

Colorado law does not create a constitutional right to a hearing. To establish a protected liberty interest under state law, an inmate must show "that particularized standards or criteria guide the State's decisionmakers." *Olim v. Wakinekona*, 461 U.S. at 249, 103 S.Ct. at 1747. If the decisionmaker can deny the requested relief for no reason or for any reason at all, the state has not created a constitutionally protected liberty interest. *Id.*

Under Colorado law, the administrator of the community correctional facility has broad discretion concerning the grounds for rejecting an offender. Section 17–27–103(3) gives the correctional board apparently unlimited authority to reject an offender after his acceptance. Section 17–27–114(1) permits resentencing of an offender when he has violated any rule or condition of his placement. In this case, the statement signed by Wilson specified a number of standard conditions of his placement and stated that he must "comply with any other conditions required by the court or [the] probation officer." The document also set forth that "the defendant may be transferred through all phases of Community Corrections at the discretion of the Probation Department, including residential to non-residential." In my view, the broad discretion granted to the authorities in this case does not invoke the protections of the fourteenth amendment.

The majority, however, implies that internment in a community corrections facility creates a conditional liberty right under the fourteenth amendment that like probation requires a hearing before it is revoked. *See Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In my view, commitment in a community corrections facility is a form of incarceration and is distinguishable from probation.

Community correctional facilities provide a sentencing option to courts for a defendant who was convicted of or who received a deferred sentence for a qualifying felony or misdemeanor. § 17–27–101, –102(4), 8A C.R.S. (1987 Supp.). Unlike the revocation of probation, a defendant is entitled to time served in a community corrections facility on direct sentence if he is later rejected from the facility. *People v. Washington*, 709 P.2d 100 (Colo.App.1985); *People v. Nix*, 44 Colo.App. 195, 610 P.2d 1088 (1980); *see People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 575 P.2d 4 (1978) (commitment to a community corrections facility is a sentencing medium that is more severe than probation, but not as harsh as incarceration); *People v. Radar*, 652 P.2d 1085 (Colo.App.1982) (same). Moreover, an offender interned in a community corrections facility is still considered to be in custody, *People v. Brown*, 695 P.2d 776 (Colo.App. 1984), and the failure to return to the facility is punishable as an escape under section 18–8–208, 8B C.R.S. (1986). *People v. Lucero*, 654 P.2d 835 (Colo.1982); § 17–27–108, 8A C.R.S. (1986). In my view, the court of appeals decision that Wilson had no right to an adversarial or evidentiary hearing is correct and should be affirmed.

Accordingly, I dissent.

I am authorized to say that Justice VOLLACK joins in this dissent.