Jeanette McCARTY, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 92SC782.

Supreme Court of Colorado, En Banc.

May 16, 1994.

Rehearing Denied June 6, 1994.

---

David F. Vela, State Public Defender, Karen M. Gerash, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russell, First Asst. Atty. Gen., A. William Bonner,

Asst. Atty. Gen., Crim. Enforcement Section, Denver, for respondent.

Justice SCOTT delivered the Opinion of the Court.

■ We granted Jeanette McCarty's petition for certiorari to review the court of appeals' judgment in *People v. McCarty,* 851 P.2d 181 (Colo.App.1992), upholding the trial court's resentencing of McCarty to probation and reimposition of the requirement that McCarty pay restitution. We conclude that after revocation of probation, a trial court may immediately resentence a defendant without holding a new sentencing hearing and may reimpose restitution in accordance with a plea agreement, without making a factual finding that the defendant has the ability to pay. We therefore affirm the judgment of the court of appeals.

I

In May of 1985, Jeanette McCarty pleaded guilty to charges of theft pursuant to section 18–4–401, 8B C.R.S. (1986). Consistent with her plea agreement, McCarty was granted a two-year deferred judgment conditioned upon her agreement to pay restitution in the amount of $29,165.00 and to "report to [her] probation officer as directed." [1]

Almost two years later, on April 8, 1987, Robert J. Shopnitz, McCarty's probation officer, filed a petition to revoke the deferred judgment. The petition alleged that McCarty violated the terms of the deferred judgment by failing both to make restitution and to report to Shopnitz as directed. Subsequently, McCarty was apprehended and brought before the trial court where she was advised of her rights and released pending a hearing on the petition. On April 19, 1988, Shopnitz requested a continuance, asserting that McCarty had agreed to begin making payments of at least $300 per month towards restitution. On Shopnitz's motion, the matter was continued for three months.

On July 22, 1988, McCarty again appeared before the trial court. Accompanied by her attorney, she admitted violating the terms and conditions of her deferred judgment. As a consequence, the trial court revoked the deferred judgment, entered a judgment of conviction on the theft charge, and sentenced McCarty to probation for a period of five years. The court conditioned McCarty's probation on the payment of "restitution in the amount ... previously ordered on deferred judgment" and on her compliance with terms of supervision determined by the probation department.[2]

In June of 1991, Shopnitz filed a petition with the court to revoke McCarty's probation. In his petition, Shopnitz asserted that McCarty failed to pay restitution,[3] failed to notify the probation department of her change of address, and failed to report

---

1. McCarty's deferred judgment was granted pursuant to the version of § 16–7–403, 8A C.R.S. (1986), in effect at the time of her original sentencing. The statute then provided that upon a plea of guilty, a trial court may continue a case for up to two years "for the purpose of entering judgment and sentence upon such plea of guilty," provided that such continuance is agreed to by the defendant, his attorney of record, and the district attorney. § 16–7–403(1). As part of such an agreement, the defendant could be required to comply with certain conditions, including restitution, "similar in all respects to conditions permitted as part of probation." § 16–7–403(2). Upon full compliance with the imposed conditions, "the plea of guilty previously entered shall be withdrawn and the action against the defendant dismissed with prejudice." *Id.* The current version of § 16–7–403 is identical in most respects, but allows for a four-year continuance where the defendant has been convicted of a felony.

2. This was McCarty's ninth appearance before the trial court since her original sentencing. She was previously before the court on March 1, 1987; April 14, 1987; June 3, 1987; June 18, 1987; June 24, 1987; July 13, 1987; December 16, 1987; and April 19, 1988. Each of these appearances related in some way to McCarty's failure to comply with the terms of her deferred judgment or her probation.

3. The petition referred to the amount as "court-ordered costs and fees." Although there are slight discrepancies as to the actual amount of restitution McCarty was ordered to pay, varying from $28,550.87 in the judgment entered on July 29, 1988, to $29,165.07 in the form setting forth the October 12, 1988, conditions of probation, it is clear from the record that the trial court only ordered restitution to the extent agreed to under the 1985 plea agreement, less approximately $625 paid over the prior years. In that same order, the trial court waived fees and costs.

monthly to the probation department as required. As a result, an arrest warrant was issued and McCarty was apprehended and brought before the trial court on the morning of July 9, 1991. The court determined that McCarty was indigent, appointed a public defender to represent her, and set the matter for hearing later that morning. Before the hearing began, defense counsel filed a written motion to disqualify the trial court judge pursuant to Crim.P. 21, contending that "the court is prejudiced as to this case, the defendant and defense counsel." The motion was based in part on the court's refusal to grant a continuance to allow counsel to investigate McCarty's financial condition. This motion was denied.[4]

At the hearing, Shopnitz testified that he was McCarty's probation officer since 1985, that McCarty understood the terms and conditions of both her deferred judgment and probation, and that McCarty had failed to report to him as required since 1991. Based on this testimony, the trial court found that McCarty had violated the conditions of her probation by failing to report to the probation department as required. The court thus revoked McCarty's five-year probation and resentenced her to probation for a term of sixteen years, *nunc pro tunc* to the date of the initial deferred judgment in 1985. The court also reimposed the requirement that she pay restitution as previously agreed.

Defense counsel argued against the reimposition of restitution, contending that the court was first obligated to find that McCarty was capable of making such payment before imposing restitution. The court responded as follows:

> Given enough time, anybody's got the ability to make restitution. So what I'm going to do is, I'm going to give her the maximum amount of time possible. And there's no point in kidding ourselves that

this lady's going to be able to pay $5,000 in a year. But I want to give her every opportunity to make amends for what she did. I went through the presentence report and this is the only time she's ever gotten in trouble. It just seems that we're dealing with a lot of money here in an unrealistic period of time. So I'm going to regrant her probation. This was a Class 3 felony. The outside of the presumptive range is 16 years. So I'm going to put her on probation for a period of 16 years, dating back to the date of her original revocation of her deferred judgment.... All other orders remain in full force and effect, and she'll be discharged.

On appeal, McCarty argued that the trial court erred in reimposing its order requiring her to pay restitution without first making a specific finding regarding her ability to pay. The court of appeals disagreed, finding reliance on the language of section 16–11–206, 8A C.R.S. (1986), that the General Assembly "intended not to allow the presentation of additional evidence concerning the offender's ability to pay restitution before resentencing." *McCarty*, 851 P.2d at 184. Additionally, the court held that a new sentencing hearing is not required on resentencing after revocation of probation. *Id.*

We granted certiorari to determine whether a new sentencing hearing is required on resentencing after revocation of probation, and whether the trial court may reimpose a requirement of restitution, without factual findings of a present ability to pay.[5]

## II

Before examining these issues in detail, we repeat the familiar principles of statutory construction which guide our review.

---

4. Before the court addressed the motion for disqualification, the prosecution moved to drop the claim that McCarty failed to pay restitution. The court then denied the disqualification motion, finding that any argument regarding the necessity of investigating McCarty's finances was rendered moot by the People's decision to drop the failure to pay allegation, and that the court was not prejudiced as to the defendant, her case, or counsel.

5. Under our order granting McCarty's petition for certiorari, the issues were set forth as follows:

 (1) Whether a new sentencing hearing is required on resentencing after revocation of probation.

 (2) Whether the trial court must permit evidence of present ability to pay before reimposing a requirement of restitution.

In construing a statute, our central purpose is to ascertain and give effect to the intent of the legislature. *People v. Wiedemer*, 852 P.2d 424, 428 (Colo.1993). To discern the legislative intent, a reviewing court should look to the language of the statute, and the words and phrases used therein should be given effect according to their plain and ordinary meaning. *People v. District Court*, 713 P.2d 918, 921 (Colo.1986). If the language is clear and the intent appears with reasonable certainty, there is no need to resort to the rules of statutory construction. *Id.* A statute must be read and considered as a whole and should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts. *Id.* Finally, we must avoid constructions that would defeat an obvious purpose of a statute when that purpose is shown clearly on the statute's face. *Wiedemer*, 852 P.2d at 428.

### A

We first examine the question of whether McCarty was entitled to a second hearing upon resentencing following revocation of her probation. McCarty argues that section 16–11–206(5), 8A C.R.S. (1986), requires that a court provide a defendant with a new sentencing hearing upon resentencing after revocation of probation. Section 16–11–206(5) states as follows:

> If the court determines that a violation of a condition of probation has been committed, it shall, within five days after the said

hearing, either revoke or continue the probation. If probation is revoked, the court may then impose any sentence or grant any probation pursuant to the provisions of this part 2 which might originally have been imposed or granted.

This language neither explicitly nor implicitly provides for a new sentencing hearing prior to resentencing after revocation of probation. The statute states that if probation is revoked, the court may "then" grant any probation which might originally have been granted. § 16–11–206(5). Colorado Rule of Criminal Procedure 32(f)(5) holds similarly that "[i]n the event probation is revoked, the court may *then* impose any sentence, including probation which might originally have been imposed or granted." (emphasis added). The use of the word "then" in both of these provisions indicates the legislative intent that the sentencing court be authorized to impose a new sentence immediately upon finding that a defendant has violated a condition of probation.

McCarty, however, contends that our decision in *Wilson v. People*, 747 P.2d 638 (Colo. 1987), mandates a new sentencing hearing prior to resentencing, even in the absence of express language. In *Wilson*, we interpreted section 17–27–114(2), 8A C.R.S. (1986), in conjunction with section 17–27–103(3), 8A C.R.S. (1986), to require a hearing before revocation of a defendant's placement in community corrections.[6] *Id.* at 642–43. We found that although section 17–27–114 [7] "does

---

6. Community correctional programs are designed to provide " 'the sentencing judge with a broader range of alternatives and with a sentencing medium that is more severe than probation, but not as harsh as incarceration.' " *Wilson*, 747 P.2d at 639 (quoting *People ex rel. VanMeveren v. District Court*, 195 Colo. 34, 36, 575 P.2d 4, 6 (1978)). Such programs "utilize a variety of means, including halfway houses and work release programs, to enable offenders to reside in the community. The basic objective of such programs is 'to limit confinement to the extent necessary to assure reasonable supervision while permitting a gradual reintegration of the offender into the society to which the offender would eventually return.' " 747 P.2d at 640 (quoting *American Bar Association Standards for Criminal Justice*, Sentencing Alternatives and Procedures, Standard 18–2.4, Commentary at 102 (1986 Supp.)).

7. The version of section 17–27–114 which was in effect at the time *Wilson* was decided stated in relevant part, as follows:

(1) Where the administrator of a community correctional facility ... has cause to believe that an offender ... has violated any rule or condition of his placement in that facility ..., the administrator ... shall certify to the appropriate judicial or executive authority the facts which are the basis for his belief and ... pending a determination by the appropriate court or executive authorities as to whether or not the offender shall remain in community corrections....

(2) If the sentencing court determines that the offender shall not remain in community corrections, the court is authorized to make appropriate orders for the transfer of such offender from the county jail to a correctional facility and to resentence such offender and impose any sentence which might originally

not explicitly require a hearing, ... the need for a hearing of some sort is implicit in the language of the statute." *Id.* at 641.

With regard to resentencing after revocation of the defendant's placement in community corrections, we held that "the defendant should have the opportunity to present evidence of any such facts and circumstances in mitigation and to argue the relevance of such information with respect to the sentence to be imposed." *Id.* at 643. We did not, however, indicate that this "mitigation phase" need be completely separate or distinct from the revocation phase of such a hearing. We emphasized only that it was not sufficient that a defendant be resentenced based only on the information contained in the original sentencing report:

> The fact that a defendant had a full hearing prior to his initial sentencing does not obviate the need for a hearing at resentencing, since facts and circumstances that arise after the original hearing may be relevant to resentencing.

*Id.* at 643.

Thus, while *Wilson* clearly dictates that a defendant be given an opportunity to be heard at sentencing, it does not mandate that a defendant be given a new sentencing hearing as well as a revocation hearing. Instead, *Wilson* contemplates a procedure at which a defendant is entitled to present evidence on her behalf both with regard to the alleged probation violation and as to mitigating circumstances relevant to resentencing—which is essentially what occurred in the instant case. At the hearing, McCarty cross-examined the People's witness, probation officer Shopnitz. Additionally, McCarty was offered the opportunity to testify and to present evidence on her own behalf. The procedures followed here stand in stark contrast to those challenged in *Wilson*, where the defendant was given no opportunity to present evidence or to speak on his own behalf prior to revoca-

tion. 747 P.2d at 639. We thus conclude that the procedure followed in the instant case is not in conflict with our holding in *Wilson.*[8]

Nor do we accept McCarty's argument that the absence of a new sentencing hearing violated her due process rights under the Fourteenth Amendment to the United States Constitution and article II, section 25, of the Colorado Constitution, both of which provide that no person shall be deprived of life, liberty, or property without due process of law. McCarty apparently contends that she was entitled to the full range of process provided at her original sentencing hearing.

 We recognize that a defendant has a due process right to be sentenced on the basis of accurate information. *People v. Eason,* 435 Mich. 228, 458 N.W.2d 17, 22 (1990); *see generally Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). That right, however, does not necessarily require that a defendant be afforded the same type of hearing which the defendant was provided prior to the original sentencing order. *See Wilson,* 747 P.2d at 642 (noting that hearings on revocation of placement in community corrections may be "limited and informal"). In the instant case, the trial court did give McCarty the opportunity to be heard, which she decided to forego, as is her prerogative. After the prosecution completed its offer of proof, the following colloquy occurred.

> **THE COURT:** [Does defendant McCarty] have any testimony ... to offer?
>
> **[DEFENSE COUNSEL]:** Not on the allegations in the Complaint.

Thus, although the court permitted McCarty the opportunity to present evidence on her behalf, she declined to do so.

Additionally, the record reflects that in making its decision to extend McCarty's pro-

---

have been imposed without increasing the length of the original sentence.

**8.** We also note that following our ruling in *Wilson,* the legislature indicated its desire *not to* require a mandatory evidentiary hearing prior to resentencing following revocation of placement in community corrections. This desire was clearly expressed through the amendment of

both § 17–27–103(3) and § 17–27–114(2), by adding a final sentence stating that "the sentencing court is not required to provide the offender with an evidentiary hearing prior to resentencing." *See People v. Wilhite,* 817 P.2d 1017, 1021 (Colo.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992).

bation from five to sixteen years, the trial court was cognizant of relevant information from a number of different sources. The trial court reviewed McCarty's presentence report, the record of McCarty's sentencing hearing, information garnered at McCarty's probation revocation hearing (including the fact that she had not been charged with a criminal act since the time of her original conviction and the fact that she only recently gained employment), and information gained by the court through McCarty's nine previous appearances—all related to her difficulties in complying with the terms of the deferred judgment and her subsequent probationary sentence.

█ We therefore reject McCarty's contention that her due process rights were violated by the fact that a new sentencing hearing was not held prior to resentencing after revocation of probation. We emphasize, however, that our ruling today is not meant to prohibit such a hearing from being held. Nonetheless, the determination of whether to hold such a hearing remains within the sound discretion of the trial court, the tribunal best-suited to determine if additional information will assist the court in resentencing.

### B

█ We now address McCarty's contention that the trial court erred in not making a finding regarding McCarty's present ability to pay prior to reimposing the requirement that she pay full restitution.

Pursuant to section 16–11–204.5(1), 8A C.R.S. (1986), as a condition to every sentence to probation, the court shall provide that the defendant make restitution to the victim.

The amount of such restitution shall be *based* on the actual, pecuniary damages sustained by the victim, the ability of the defendant to pay, and the defendant's obligations to support his dependents and to meet other family obligations. The court

shall fix the manner and time of performance.

§ 16–11–204.5(1) (emphasis added). In *People v. Quinonez,* 735 P.2d 159, 164 (Colo. 1987), we noted that this statute provides for the trial court to "base" its restitution awards on several factors, including ability to pay, but does not require the court to make specific "findings." We then held as follows:

There is no doubt that the legislature knows how to require express factual findings when it feels such are appropriate. *E.g.,* § 18–1–105(7), 8B C.R.S. (1986) (requiring express findings by trial court explaining its reasons for sentencing). Since the legislature had indicated that such findings are not required, we should not impose this additional burden upon trial courts absent compelling needs. No such needs are present in this area.

(footnote omitted). In *Quinonez,* we also pointed out that prior to 1985, the restitution statute mandated that restitution was to be " 'waived totally' " if the court " 'finds that such restitution will work an undue hardship on the defendant or his family.' " 735 P.2d at 164 n. 5 (quoting § 16–11–204, 8 C.R.S. (1979 Supp.)). However, that very provision we relied upon in *Quinonez* was deleted in 1985, thus indicating the General Assembly's intent to no longer require factual findings regarding the defendant's financial circumstance prior to imposing restitution.[9] Thus, in reliance on *Quinonez* and the plain language of the relevant statute, we reject McCarty's contention that the trial court must make a specific finding regarding ability to pay prior to imposing restitution as part of a new sentence imposed after revocation of probation.

Moreover, in *Quinonez,* we held that where a defendant, as part of a plea agreement, consents to restitution, he cannot later disavow the restitution obligation. *Quinonez,* 735 P.2d at 164. In this case, McCarty agreed to make restitution in the amount set forth in the court's order on several occa-

9. We continue to adhere to our statement in *Quinonez* that we do not wish to dissuade a sentencing court attempting to determine the amount of restitution from examining any probation or presentence report and any other evidence which the parties present at the sentencing hearing regarding the amount of damage, the defendant's present and future financial circumstances, and the defendant's family obligations. *See Quinonez,* 735 P.2d at 164.

sions, without objection and while represented by and in the presence of counsel. She first agreed to pay restitution in May of 1985, when she entered her plea of guilty and executed a written form of stipulation and plea agreement in exchange for a deferred judgment. She again accepted the court's terms in February of 1988, when she agreed to make monthly payments of $300. And finally, in July, 1988, when judgment was entered and she was first sentenced to probation, she again agreed to pay full restitution. As we held in *Quinonez,* under such circumstances "we should not impose this additional burden [of considering changed financial condition] upon trial courts absent compelling needs." *Id.* at 164.

 McCarty also contends that due process concerns are implicated in this instance by the court's failure to consider her changed economic circumstances prior to reimposing the order of restitution.

The record indicates, however, that the trial court was fully aware of McCarty's indigence and that the court relied on that fact in *extending* the time required for McCarty to complete the restitution to which she previously consented to the maximum period, sixteen years. At the revocation hearing, the court heard the testimony of probation officer Shopnitz to the effect that McCarty told him she had been living in her car for the past six months. Then, after finding that McCarty had violated her probation by failing to report to her probation officer, the court held as follows: "I'm going to regrant her probation. And at the pace we're going here, it seems to me, we might as well make it the maximum time possible, *so maybe when this lady gets back on her feet,* she'll be able to make her restitution." (emphasis added). Defense counsel objected, arguing that the court was required to make a finding of McCarty's ability to pay before it could reimpose restitution as a condition of her probation. The court responded:

> All right. Well, I guess, given enough time, anybody's got the ability to make restitution. So what I'm going to do is, I'm going to give her the maximum amount of time possible. And there's no point in kidding ourselves that this lady's

going to be able to pay $5,000 in a year. But I want to give her every opportunity to make amends for what she did.

. . . .

> It just seems that we're dealing with a lot of money here in an unrealistic period of time.

We therefore reject McCarty's contention that the trial court failed to consider her changed economic circumstances prior to reimposing restitution. In extending McCarty's payment period from the original five years to sixteen years, the trial court considered the fact that McCarty's economic situation had worsened since the time of her original sentence, and it adjusted her new sentence accordingly.

## III

In summary, we decline to require that a sentencing court provide a defendant with a second evidentiary hearing after revocation of probation and prior to resentencing. Neither the plain language of the relevant statutory provision, section 16–11–206, nor our precedent provides for such a hearing. Additionally, we reject the contention that prior to ordering restitution in accordance with a plea agreement upon resentencing, a trial court must make a factual finding as to the defendant's ability to pay. Finally, we find unpersuasive defendant's argument that the trial court violated defendant's constitutional due process rights. Accordingly, we affirm the judgment of the court of appeals.

LOHR, J., does not participate.